PEARL LUCILLE FISHER, by her Guardian, FANNIE SCAMMEL, Appellant, v. CLYDE S. FISHER ET AL., Respondents.

The St. Louis Court of Appeals. Argued and Submitted December 5, 1919. Opinion Filed January 6, 1920.

1. TRUSTS: Dry Trusts: Trust Created by Insurance Policy Passive or Dry Trust. The provision or rider to an insurance policy which provides for the payment in the event of insured's wife predeceasing him, of certain monthly installments to a brother of insured, trustee for the daughter of the insured, etc., *held* that the trust created by the policy or, more accurately, its rider, is a passive, dry trust, uncoupled with any interest or duty in the trustee with respect of the fund beyond its collection from the insurance company and payment of it to the beneficiary, and that the trustee has no right, looking at the terms of the trust itself, to withhold the same from the daughter or, she being a minor, her duly appointed guardian.

2. ———: Statute of Uses: Does Not Affect Personalty. The Statute of Uses, as it is commonly called (section 2867, Revised Statutes 1909), does not affect personalty.

3. WITNESSES: Trusts: Trustor Dead Testimony of Trustee Incompetent. In an action by the daughter, named by her father as beneficiary, of certain installment payments due under a life insurance policy of the father, against the trustee named by the father to receive payments thereunder for the benefit of the daughter, etc., *held* under the provisions of section 6354, Revised Statutes 1909, it was not competent for the trustee to prove the character

of his trust and his duties under the trust by conversations between himself and the trustor, the creator of the trust, no one else appearing to have heard it or to have been present.

4. **TRUSTS: Removal of Trustee: Benficiary's Guardian Unfriendly to Trustee Not Cause For Removal.** The fact that the relations between the guardian of a minor and a trustee are not amicable, *held*, that of itself was not sufficient cause for the removal of the trustee.

Appeal from the Circuit Court of the City of St. Louis. —*Hon. Thos. C. Hennings*, Judge.

REVERSED AND REMANDED (*with directions*).

*Jourdan, Rassieur & Pierce* for appellant.

(1) (a) When property is vested in one person merely in trust for another, it is a simple or dry trust, and the beneficiary is entitled to the actual possession and enjoyment of the property and a court of equity will enforce such by decree. 2 Perry on Trusts (6 Ed.), p. 847; 2 Perry on Trusts. sec. 521; Lewin's Law on Trusts (12 Ed. Dale & Streeten), chap. 2, p. 16; Atkins v. Atkins, 70 Vt. 565, 41 Atl. 503; Guild v. Allen, 28 R. I. 430, 67 Atl. 855; Matter of Denfield, 156 Mass. 265, 30 N. E. 1018; Hill v. Hill, 132 N. W. 738; Hamlin v. Mansfield, 88 Me. 131, 33 Atl. 788; Ringrose v. Gleadall, 121 Pac. 407. (b) The above rule has been recognized in Missouri. Cornwell v. Wulff, 148 Mo. 542; Webb v. Hayden, 166 Mo. 39. (c) The above rule is applicable even though the beneficiary be a minor or other person incapable of managing its affairs. 2 Perry on Trusts, sec 521. (2) (a) A person who bears ill-will or hatred towards a beneficiary or those with whom the beneficiary must reside and allows such hostile feeling or ill-will to control his actions as trustee for such a beneficiary, is an improper person to act as trustee and for this reason alone equity will remove him from such office. Gartside v. Gartside, 113 Mo. 348. (b) Defendant, Clyde S. Fisher, is an unfit person

to act as trustee here, because: (1) He allows his hostile feelings towards plaintiff's guardian to control his handling and. disposition of the plaintiff's funds; (2) He is impertinent and arrogantly and without justification has refused to give plaintiff's guardian full and fair information concerning the trust funds, their source and disposition; (3) He has completely failed to concern himself in the welfare of plaintiff and allow the expenditure of funds in question, for necessary maintainance and medical attention. (4) Defendant, Clyde S. Fisher, should at least have been compelled to give a bond. He has no available property out of which the plaintiff could collect what is due her. The policy does not provide that he shall have and retain the funds without security. (5) Defendant, Maude S. Fisher, has absolutely no interest in the payments made upon the policy to date. She claimed an interest therein but there was nothing to justify it. A court of equity in the interest of plaintiff, an infant, its ward, should have at least removed this cloud and settled the title.

*Henry A. Baker* and *E. T. & C. B. Allen* for respondent.

(1) The Statute of Uses in Missouri does not affect personal property. Sec. 2867, R. S. 1909; Slevin v. Brown, 32 Mo. 185; 39 Cyc. 206. (2) The Statute of Uses in Missouri does not affect the transfer of real estate by a father to a trustee, with no special function, for the benefit of his minor daughter, until the child reaches her majority. Ottomeyer v. Pritchett, 178 Mo. 166. (3) There is no objection to a trust because it is created partially by a written instrument and partially by oral declarations. Kendrick v. Ray, 173 Mass. 305; Lovegood v. Assn., 19 Misc. 460, 44 N. Y. Supp. 563. (4) The plaintiff alleged and proved an active trust in defendant Fisher of personal property for the use of a minor . The sustaining of her objection

to oral declarations of the trustee in reference thereto, does not convert it into a passive trust because some of the terms are not disclosed by the policy. Pitts v. Weakley, 155 Mo. 143. (5) A statutory guardian and curator of the minor does not become successor trustee of the proceeds of the insurance policy. The statute does not make her a trustee, neither does the policy. It would therefore avail her nothing to have the defendant removed as trustee. Webb v. Hayden, 166 Mo. 48; McKee v. Allen, 204 Mo. 655.

STATEMENT.—Of date May 10, 1909, the Prudential Insurance Company of America issued its policy on the life of Nathan Walter Fisher, whereby, by a "rider," it promised, upon the death of Fisher, he having complied with the terms and conditions of the policy, to pay to Anna Pearl Fisher, his wife, the sum of $30 immediately upon receipt of proof of his death, and $30 thereafter on the first day of each month until 240 monthly installments shall have been made, and thereafter on the first day of each month as long as the beneficiary shall live, it being provided:

"If the beneficiary, Anna Pearl Fisher, shall predecease the insured or shall survive the insured, but die before the first two hundred and forty monthly installments payable according to the terms of the policy shall have been paid, the said two hundred and forty monthly installments or such of them as remain unpaid shall be paid, each as it becomes due, to Clyde S. Fisher, brother of the insured, trustee for Pearl Lucille Fisher, daughter of the insured, if said Pearl Lucille Fisher be living on the due date of such installment, otherwise to Maude S. Fisher, mother of the insured, if said Maude S. Fisher be living on the due date of such installment.

"It is specially understood that in the event of the death of the beneficiary, Anna Pearl Fisher, the installments payable under the policy shall not continue after 240 monthly installments shall have been paid."

Claiming that the trustee, Clyde S. Fisher, had collected the monthly installments which fell due after the death of the insured and original beneficiary, the wife, and had never paid any part of it over to Pearl Lucille Fisher, or to her guardian, or to any one for her, plaintiff, Pearl Lucille Fisher, a minor, through her guardian, Fannie Scammell, commenced her action in the circuit court of the city of St. Louis, against Clyde S. Fisher, Maude S. Fisher and the Prudential Insurance Company of America, the latter hereafter referred to as the Insurance Company. In her amended petition upon which the case went to trial, she avers that Anna Pearl Fisher, the wife, predeceased her husband or, at least, did not survive him long enough to acquire any interest in the money due under the policy, she and her husband dying practically at the same time. She further avers that Maude S. Fisher, the mother of the insured, at the time of the institution of this action was still living, and that the grandmother of plaintiff, Fannie Scammell, had been duly appointed and qualified as guardian of the person and estate of plaintiff Pearl Lucille Fisher by the Probate Court of the City of St. Louis. It is further averred that Clyde S. Fisher , in April, 1912, made proof of the death of Nathan Walter Fisher to the Insurance Company and, as trustee of Pearl Lucille Fisher, demanded payment to him of the amount due under the policy; that the Insurance Company paid the installments then due, and thereafter, and under the circumstances above stated, Clyde S. Fisher, on the first day of each succeeding month, beginning with the first day of May. 1912, had collected form the Insurance Company the monthy installments of $30 due under the policy, amounting in all to the sum of $1440, and that he intends in the future to collect the remaining installments as they become due; that he has possession and control of such fund, as trustee, and has refused and still refuses to pay the same over to plaintiff and will continue to withhold from her any sums he collectes in the future.

203 M A.—4

It is further avverred that Clyde S. Fisher is acting as such trustee without bond, refuses to give a bond, has resisted every effort of plaintiff to compel him to give bond for the honest and faithful management and control of the fund, although, as it is averred, he is insolvent or owns so little property that plaintiff would be unable by law to recover of him the amount due her; that the sole duty of Clyde S. Fisher, as trustee, is to collect and turn over to plaintiff's guardian the amount collected by him, but that, in violation of his duty, he wrongfully withholds the money from plaintiff and converts it to his own use. Further averring that plaintiff, Pearl Lucille Fisher, is a minor and sorely in need of funds for her care and maintenance, and that the trustee, Clyde S. Fisher, witholds the funds and proceeds of the policy from her, so that she is entirely dependent upon the charity and beneficence of friends and relatives, it is averred that Clyde S. Fisher denies the right of plaintiff to the fund, although, as it is averred, he acts for plaintiff in collecting it and would not be entitled to receive it unless it belonged to her. It is finally averred that Clyde S. Fisher and his family harbor ill feeling and ill-will against the guardian of plaintiff and the persons who are now caring for and rearing her, to such extent that his entire conduct in handling the fund is actuated and controlled by intense venom, hatred and ill feeling, making it impossible for plaintiff, through her guardian, to deal with Clyde S. Fisher in matters concerning the rights of plaintiff, and that for and on account of the matters and things stated above, Clyde S. Fisher is an unfit and improper person to act as trustee and has violated the duties of his office. Plaintiff prays the court that an accounting and settlement be had with and against defendants Clyde S. Fisher and the Insurance Company; that plaintiff have judgment against Clyde S. Fisher, trustee, for the amount collected by him, together with interest from the date when the same became due to plaintiff, and that he be removed as such trustee and that defend-

ant, Maude S. Fisher be adjudged to have no present interest in the fund or in any of the installments due and paid under the policy, and for such further and other relief as from the premises may be meet and proper, together with costs.

By his answer to this amended petition, defendant Clyde S. Fisher admits the minority of plaintiff and that Fannie Scammell is her guardian; that he is the paternal uncle of plaintiff and trustee as in the petition alleged; that defendant Maude S. Fisher is the paternal grandmother of plaintiff and has a contingent interest in the insurance policy as alleged; that the Insurance Company is duly incorporated as in the petition alleged; that plaintiff's father, Nathan Walter Fisher, and her mother, Anna Pearl Fisher, both died on April 2, 1912; that on May 10, 1909, the Insurance Company insured the life of Nathan Walter Fisher on the terms alleged in the petition and agreed to make the payments as averred, attaching the rider to the policy which set out the interest of Pearl Lucille Fisher, as averred; that in April, 1912, defendant Clyde S. Fisher made proof of the death of Nathan Walter Fisher, demanding the payment of the amount due under the policy, as trustee, and that the Insurance Company has since paid to him, Clyde S. Fisher, as said trustee, the installments due under the policy; and that he, Clyde S. Fisher, intends to collect the remainding installments as they become due under the policy. He denies that the amount he collected was $30 a month but avers that because of a discrepancy in the age of the beneficiary, Anna Pearl Fisher, between that given to the Insurance Company when the policy was taken out and that given after the death of the beneficiary, the defendant insurance company found that Nathan Walter Fisher had not paid sufficient premiums on the policy by the sum of $5.22, which was deducted from the first $60 payable under the policy, and that thereafter he, Clyde S. Fisher, collected from the Insurance Company, upon proof of death, the first two installments on May 1, 1912, of $54.78,

instead of $60, and thereafter the first of each month, beginning with June 1, 1912, and ending with March 1, 1916, $29.46, or a total of $1409.94, the difference between $30 a month and $29.46 a month, being occasioned by the mistake referred to above; that the last installments of $29.46 due under the policy on April 1, 1916, had not, at the time of filing the answer, which was done on April 17, 1916, been paid to him by the Insurance Company by reason of the institution and pendency of this suit. Further answering, defendant Clyde S. Fisher admits that he has possession and control of the fund as such trustee, collected as above stated, and that he has not, up to this time, paid over any of the fund to plaintiff's guardian but denies that he has determined on a fixed policy in the future of making no payments whatsoever out of the fund to the guardian. He admits that he is acting as trustee, without bond, and sets up proceedings instituted by plaintiff, requiring him to give bond; avers that that suit was vexatious; that he had filed an answer to it and had appeared in court for a hearing; that on the instance of plaintiff's attorney the hearing was passed, that attorney informing defendant that he expected to dismiss the petition but had not done so to date. Further answering, the defendant Clyde S. Fisher says that there is no good reason existing why he should be required to give bond as trustee; that his brother, the insured, knew of his financial condition when he appointed him trustee. He denies that he is insolvent and avers that he has a good and responsible position with a manufacturing company of St. Louis; that besides his salary he owns, over and above household goods, personal property in the sum and value of three or four thousand dollars, and also owns an interest in a piece of real estate in the city of St. Louis and is in better financial condition to-day than when he was appointed as trustee. He further denies that his sole duty under the policy is to collect and turn over to plaintiff's guardian the amounts collected; denies that he is violating his duties; that he is wrong-

fully withholding the money from plaintiff, or that he converts it to his own use, and denies that he is an unfit and improper person to act as trustee, or that he is violating the duties of his office. He further avers, and for a defense to the action alleges, that he has a right, under the terms of the policy, to exercise his best discretion in the expenditure of the fund for the interest of the ward; that he is her uncle and has as much interest, if not more, in her welfare than has her guardian, Fannie Scammell; that his highest concern in the management of the trust fund is to see that the expenses against it are kept down and that his ward may receive as large an amount as possible under the policy when the fund shall be turned over to her in the future; that he had been appointed guardian of the ward by the Probate Court on April 3, 1912; that on April 8, 1912, on the petition of Fannie Scammell his appointment was revoked and she appointed in his place on June 25, 1912, the court holding that the grandmother had a better legal right and not that this defendant was an unfit person; that in making application for appointment as guardian Mrs. Scammell and her daughter and son testified, under oath, and held out expectation that the ward would be supported and maintained and educated out of the funds of Fannie Scammell or of her daughter or son and that Mrs. Scammell, if appointed guardian, would not use the property of the ward for that purpose; that nevertheless since her appointment as guardian Mrs. Scammell had obtained an allowance of $15 a month for the education, support and maintenance of the ward, dating that back to the beginning of her appointment; that the first settlement filed by Mrs. Scammell in the Probate Court shows that the guardian had received the sum of $800 belonging to her ward and that that sum is entirely exhausted by allowances to the guardian and expenses of administration, and that the object and purpose of Fannie Scammell in bringing the proceeding herein and in trying to get defendant removed as trustee is to get

herself appointed as trustee in order that she may get possession and control of the trust fund and expend the same in allowance to herself as she has expended the estate of her ward heretofore; that he, defendant Clyde S. Fisher, if given the care and custody of the ward, offers and promises that he will educate, support and maintain her without charge and will save up her entire interest in the trust estate for her use and benefit in the future when she may have no one to take care of her; that he is a married man and has a home and is willing and able to take good care of his ward. He denies any ill feeling or ill-will against the guardian of plaintiff or her family, but avers that Mrs. Fannie Scammell and her family harbor ill feeling and bitterness and hostility toward himself and his mother in this: that although Mrs. Scammell had been furnished by him with a complete accounting on May 20, 1913, of the funds received by him as trustee under the insurance policy, she had brought a vexatious proceeding in the Probate Court charging him with concealment of assets, which latter, on hearing, was dismissed by the Probate Court, and that Mrs. Scammell and her family, by slights and insulting conduct had prevented defendant and his mother from calling upon or seeing her ward; that on petition to the Probate Court and on hearing of evidence, the Probate Court granted defendant's prayer for the separate custody of the ward and had brought this action and also that to have him give bond. Further answering and as a defense, Clyde S. Fisher files an itemized account or statement of the receipts by him as trustee, showing a total of $1409.94, and that the only expenditures paid out on the account by him is the sum of $25 paid as attorney's fee by him, caused by Mrs. Scammell proceeding against him for the discovery of assets.

The defendant Insurance Company filed an answer, admitting the policy and that proof of the death of Nathan Walter Fisher had been filed with it by Clyde S. Fisher; that upon the filing of the proof of death Clyde

S. Fisher demanded of defendant payment of the amount due under the policy, as trustee for plaintiff; that he collected from the defendant insurance company the sum of $30, on proof of the death of the insured, and $30 on the first day of each succeeding month, beginning with the first day of May, 1912; denies all knowledge and interest as to the other averments in the petition and avers that it is without interest in the controversy existing between plaintiff on the one hand and the defendant Clyde S. Fisher and Maude S. Fisher on the other.

Maude S. Fisher filed her answer, averring she is the paternal grandmother of the plaintiff and contingent beneficiary named in the policy, and that she claims some interest in the fund due and payable under the policy, contingent on the death of Pearl Lucille Fisher, but denies all other allegations in the petition.

There was a reply filed to the new matter set up in the answer of defendant Clyde S. Fisher.

At a trial before the court the bill was dismissed and plaintiff, filing a motion for new trial and excepting to that being overruled, has duly appealed.

## OPINION.

REYNOLDS, P. J. (after stating the facts as above) —We have read over the record of the proceedings at the trial of this cause and it may be said generally that there was evidence tending to sustain the material facts as pleaded by the respective parties, that is, as to the issuance of the policy, its terms and the beneficiaries thereunder, collection of the installments by the defendant Clyde S. Fisher, as trustee, as they respectively became due, and that he had in his hands at the institution of this suit at least the amount admitted by him. The testimony was conflicting as to the relations between Mrs. Scammell and her family and defendant Fisher and his.

In our view of the case, it turns upon the construction of the provision or rider to the insurance policy, which, to repeat as far as necessary, provides:

"The said two hundred and forty monthly installments or such of them as remain unpaid shall be paid, each as it becomes due, to Clyde S. Fisher, brother of the insured, trustee for Pearl Lucille Fisher, daughter of the insured, if said Pearl Lucille Fisher be living on the due date of such installments, otherwise to Maude S. Fisher, mother of the insured, if said Maude S. Fisher be living on the due date of such installment."

The payments are limited to 240 monthly installments.

Pearl Lucille Fisher, the daughter of the insured, being alive on the due date of all the installments that have so far fallen due after the death of the insured and of his wife, the first named beneficiary, undoubtedly became entitled to receive those installments through her trustee, Clyde S. Fisher.

We think that it is beyond question that the trust created by the policy or, more accurately, its rider, is a passive, dry trust, uncoupled with any interest or duty in the trustee with respect of the fund beyond its collection from the Insurance Company and payment of it to the beneficiary, and that he has no right, looking at the terms of the trust itself, to withhold the same from plaintiff or, she being a minor, her duly appointed guardian.

That this is a simple or dry trust is clear, a reference to accepted authorities conclusive shows. Thus, in 2 Perry on Trusts and Trustees (6 Ed., Howes' Revision), sec. 520, it is said:

"It is a simple or dry trust, when property is vested in one person in trust for another, and the nature of the trust, not being prescribed by the donor, is left to the construction of law. In such case the *cestui que trust* is entitled to the actual possession and enjoyment of the property, and to dispose of it, or to call upon the trustee to execute such conveyances of the legal estate

as he directs. In short, the *cestui que trust* has an absolute control over the beneficial interest, together with a right to call for the legal title, and the person in whom the legal title vests is a *simple* or *dry trustee.*"

It is further said by the same author (section 521):

"In a simple trust of this nature, the dry trustee has no power of managing or disposing of the estate, even although the *cestui que trust* is an infant, married woman, lunatic, or other person incapable of the management or control. Nor can he alter the nature of the property, by changing real estate into personal, or *vice versa.*"

In 1 Lewin on Trusts and Trustees (First American, from Eighth English Edition by Flint), chap. 8, it is said:

"The *simple* trust is where property is vested in one person *upon trust* for another, and the nature of the trust, not being prescribed by the settlor, is left to the construction of law. In this case the *cestui que trust* has *jus habendi,* or the right to be put into actual possession of the property, and *jus disponendi,* or the right to call upon the trustee to execute conveyances of the legal estate as the *cestui que trust* directs."

The text-writers are supported by ample authority, as for instance see Atkins v. Atkins, 70 Vt. 565; Hill v. Hill, 90 Neb. 43, 1. c. 48; Hamlin v. Mansfield, 88 Me. 131, 1. c. 138; Ringrose v. Gleadall, 17 Calif. App. 664, 1. c. 669.

We find no decision by our courts directly in point. In Cornwell v. Wulff, 148 Mo. 542, 1. c. 556, 50 S. W. 439, section 520, Perry on Trustee, is quoted approvingly. The Cornwall decision was overruled in Walton v. Drumtra, 152, Mo. 489, 54 S. W. 233, but we do not understand that the quoted matter from Perry on Trusts has been disavowed.

It is true, as stated by counsel for respondent, that our "statute of uses," as it is commonly called (section 2867, Revised Statutes 1909), does not affect personalty. See Slevin, Trustee, v. Brown, 32 Mo. 176, 1. c. 185.

As we have seen the rule is applicable even though the beneficiary be a minor or other person incapable of managing its affairs. Perry on Trusts and Trustees, supra, sec. 521.

Learned counsel for the respondent assert that plaintiff had alleged and proved an active trust in defendant Fisher, of personal property for the use of a minor, and their claim that they had proved an active trust is based on the fact that they had offered to prove this by the testimony of Clyde S. Fisher alone, uncorroborated by any third party; that in a conversation with Nathan Walter Fisher, the donor or trustor of the trust, and himself, the donor imposed on this trustee the following duties: To collect, retain and invest the money until the beneficiary, called Pearl Lucille Fisher, becomes of age, at which time to turn the money over to her; and also it was the understanding between Nathan Walter Fisher and the witness that he was to have the custody of the child; he and his mother were to take care of the child.

It is true that the defendant Clyde S. Fisher offered to prove these facts by his own testimony, but it cannot be said that he proved them for the very sufficient reason that the learned trial court excluded the testimony, on the ground that Nathan Walter Fisher being dead, the defendant could not testify as to conversations or understandings between himself and the dead man as to the contract between them, here the cause of action. Learned counsel for respondents rely upon the decision of our Supreme Court in Pitts v. Weakley, 155 Mo. 109, l .c. 143, 55 S. W. 1055, in support of their contention. At that place it is said: "What the terms of the trust were, if there was a trust, are known only to Mrs. Weakley and the plaintiffs themselves would not allow her on the trial to disclose them." This is assumed by counsel to mean that the Supreme Court criticized advisedly the action of the trial court in excluding that testimony. This expression is far from holding any such thing. The disqualification of witnesses, where one of

the parties to the contract or cause of action is dead, imposed by section 6354, Revised Statutes 1909, has been a matter of frequent decision in our State, the decisions not always reconcilable. One of them, near in point here, is that of Gibbs v. Haughowout, 207 Mo. 384, 105 S. W. 1067. In that case it was held that the grantee in a deed being dead at the time of the trial, the grantor is not a competent witness to testify as to what the contract was in pursuance to which the deed was made, our Supreme Court holding that in such case the trial court had committed error in permitting him to testify.

In Collins v. Crawford, 214 Mo. 167, l. c. 186, 112 S. W. 538, where objection had been made to the defendant testifying to a contract with a deceased party, our Supreme Court said that the witness "simply testified to the disposition he made of the trust funds in his hands. This was a suit by plaintiff for lands which he claimed were devised to him, not by his mother, Mrs. Collins, but by his grandfather, Mr. Crawford. Mrs. Collins was not interested in this action and neither her heirs nor personal representatives were parties to the suit. Plaintiff does not claim under or through Mrs. Collins, but as a purchaser from the grandfather. We do not think the statute has any application to the facts developed." In the case at bar the cause of action is on a contract made for the benefit of the plaintiff by her father with the Insurance Company and the defendant Fisher, as trustee, it being claimed by Fisher that under the provisions of that contract he is entitled to handle the trust money in a certain way, deriving that from the authorization given verbally to him by his deceased brother. We think that this case comes distinctly under the statute (section 6354), which provides that "in actions where one of the original parties to the contract or cause of action in issue and on trial is dead, . . . the other party to such contract or cause of action shall not be admitted to testify either in his own favor or in favor of any party to the action claiming under him," etc.,

and that there was no error in the trial court excluding this testimony.

Learned counsel for respondent cite in support of their proposition, that there is no objection to a trust because it is created partly by a written instrument and partly by oral declarations, two cases: Kendrick v. Ray, 173 Mass. 305, and Bloodgood v. Massachusetts Ben. Life Ass'n, 44 N. Y. Supp. 563. It is impossible to tell from the reading of the opinions in those cases whether or not the parties proposing to give the oral testimony as to the intent of the trust or its terms were qualified witnesses under our statute, so that as far as this point is concerned we do not think those cases applicable.

In Atkins v. Atkins, supra, a very interesting decision by the Supreme Court of Vermont, in which it appeared that the insured had endeavored by his will to dispose of the proceeds of the policies in a manner different from that provided for in the policies, it is held that the rules of construction applicable to wills are also applicable to the construction of insurance policies and like contracts. It is further there held (l. c. 566):

"It is a general rule that a policy of life insurance, and the money to become due under it, belong, from the time it is issued, to the person or persons named in it as the beneficiary or beneficiaries, and that there is no power in the person procuring the insurance, by any act of his, by deed or will, to transfer to any other person the interest in the person named, nor to modify and limit such interest. An irrevocable trust is created." (Cases are cited from the Supreme Court of the United States and from Massachusetts, Pennsylvania, Indiana and Connecticut.)

"The person who procures insurance on his life payable to a beneficiary named in the policy, thereby creates in effect a voluntary trust, and what is equivalent to a voluntary settlement, for the benefit of such beneficiary, and when such trust or settlement is once created, it cannot be annulled nor modified by the act or declara-

tion of the party creating it, unless a power of revocation or modification is reserved by the terms of the trust for that purpose.''

But we are not holding that parole testimony cannot be given to explain the terms of the trust here involved. That question is not before us. We do hold that it was not competent for the trustee to prove the character of his trust and his duties under the trust by conversations between himself and the trustor, the creator of the trust, no one else appearing to have heard it or to have been present. To admit such evidence on the sole testimony of the trustee, the trustor dead, would open the door to the the perpetration of unlimited fraud. We think that in the case at bar the disqualification of the statute is applicable here and that the testimony offered was properly excluded.

It will be noticed that by his answer and by some testimony, defendant Clyde S. Fisher charges that the guardian of plaintiff has wasted or expended all of her property and will have to draw on this fund for her support, and that it would be hazardous to the interest of the child to turn the money over to the guardian. The guardian was appointed by, and is under, the exclusive jurisdiction, in the first instance, of the Probate Court and it is not to be assumed that that court will make either undue allowances for expenditures or permit any wasting of the fund of the ward.

This clause of the policy here involved makes the installments payable monthly, and that, to our minds, evinces a very clear intention that it is for the immediate need and support of the daughter. If the father had intended to create a fund to become available when she became of age, it was easy to have done that, and very likely, in that situation, he could have secured a much larger sum payable at the arrival of majority of the daughter for the same premium that he paid to secure monthly payments of installments. Construing this provision of the policy as we would wills or other contracts, it seems very clear that it was the intention of

the father to provide for the immediate needs of his daughter if she lived until the 240 payments fell due.

We have read the testimony as to the relations between the grandmother, who is the guardian of plaintiff, and the defendant Clyde S. Fisher. It must be admitted that by the showing made by defendant himself, they are not very amicable. That, however, in itself, we would not hold as a sufficient cause for the removal of the trustee.

Our conclusion on the whole case is that the judgment of the circuit court must be reversed and the cause remanded with directions to that court to order an accounting of the amount of funds collected by the trustee from the defendant insurance company from the beginning of payments due and made to him until the time of the accounting, and that whatever sum is found to be due, with interest from the date of the collection of the several installments, be adjudged against him and he be required to pay the amount to the guardian of the plaintiff, and that all amounts falling due hereafter under the terms of the clause of the policy involved be paid by the Prudential Insurance Company of America to Mrs. Fannie Scammell as long as she remains guardian of the ward, and upon the ward arriving at majority to be paid to her direct, until the whole 240 payments shall have been made, preserving the contingent right of the mother, Maude S. Fisher, to any of the 240 installments unpaid during the life of Pearl Lucille Fisher, as provided for in the policy, costs to be adjudged against Clyde S. Fisher, both of this suit and of the present appeal, payable by him individually and not out of the trust fund. *Allen* and *Becker, JJ.,* concur.