Mary Jane FARKAS, Appellant,

v.

Calogero CALAMIA, Individually and as Executor of the Estate of Caterina Calamia, and Gregorio Calamia, Respondents.

No. 49919.

Supreme Court of Missouri,

Division No. 2.

Dec. 9, 1963.

Edward J. Delworth, Clayton, for appellant.

Robert G. Ruhland and Gossom & Ruhland, St. Louis, for respondents.

STOCKARD, Commissioner.

Plaintiff has appealed from an adverse judgment in her action for a declaratory judgment to construe the will of Caterina Calamia, deceased. Appellate jurisdiction is in this court because appellant seeks to have the will construed to vest in her a fee simple title to certain real estate.

Caterina Calamia, a widow, died testate on August 9, 1961, and her will was admitted to probate in the Probate Court of St. Louis County. By her will she first directed that all her just debts and funeral expenses be paid, and then by "Article Second" she made the following provision:

"All the rest, residue and remainder of my estate, both real and personal, and wherever situated, I hereby give, bequeath and devise unto my three children, Calogero Calamia, Gregorio Calamia and Mary Jane Farkas, to be divided between them equally share and share alike. However, the portion of Mary Jane shall be paid to her in monthly installments of $20.00 until exhausted, in the event that she shall die before her share is used up, then any balance thereof shall revert to my above named two sons to be divided between them equally. For the purposes of Mary Jane's share, I name my son, Calogero, to act as trustee, in the event he cannot act as such, then I name Gregorio, my son, to act as such."

The assets of the estate, as inventoried, consists of real estate valued at $12,000 and personal property valued at $9,267.45. The value of the net estate is not shown. The only witness at the trial was appellant. From her testimony it appears that she was the adopted daughter of the testatrix, having been adopted when three or four years of age, and that she was about thirty-five years of age at time of trial.

Appellant contends that she was devised a fee interest in the real estate and that she was bequeathed an absolute ownership of an interest in the personal property. She asserts that the trial court erred in holding that "the intent of the testator was to grant a contingent remainder" to Calogero and Gregorio Calamia as to the one-third of the estate in which she is to receive an interest because after the testator had granted a fee or an absolute interest to her by the first sentence, an attempt by use of the subsequent language to reduce that interest was of no effect.

By the first sentence of "Article Second," if the testatrix had there stopped, she would have devised fee simple title to appellant of an undivided one-third interest in the real estate and would have bequeathed to her absolutely an undivided one-third interest in the personal property. However, the "keystone of construction" in determining the meaning of a will is the intent of the testator, McMillan v. Barnard Free Skin & Cancer Hospital, 304 Mo. 635,

264 S.W. 410, 413, and this intent must be gathered from the whole will, St. Louis Union Trust Co. v. Kern, 346 Mo. 643, 142 S.W.2d 493, 496, and " 'not from single words, passages, or sentences.' " Shaw v. Wertz, Mo., 369 S.W.2d 215, 217. See also Vaughan v. Compton, 361 Mo. 467, 235 S.W.2d 328; Smith v. Smith, 359 Mo. 44, 220 S.W.2d 10, 12. The rule for determining the effect of subsequent language which purports to reduce the quantum of a devise or bequest made by previously used language is well stated in Housman v. Lewellen, 362 Mo. 759, 244 S.W.2d 21, 24, as follows: " '[T]he devise of a fee in terms, or by words necessarily describing an absolute estate * * * cannot be annulled except by later language in the will, which expressly or by necessary implication, arising from words equally as clear and conclusive as those in granting the fee, cuts down the previous grant of the fee.' " See also Presbyterian Orphanage of Missouri v. Fitterling, 342 Mo. 299, 144 S.W.2d 1004, 1007. The converse of the above rule is stated in Vaughan v. Compton, supra, 235 S.W.2d at p. 331, as follows: "It may be conceded that when property is devised in general terms, and without the use of any qualifying words denoting that a specific quantum as to estate is being conveyed, that such estate may be later limited or converted to a life estate by the further use of other words or clauses implying that of necessity the estate granted is only for the life of the devisee, with a remainder over to certain named others. * * * But such a limitation over must clearly appear, and the expressions and words used to denote such limitation over must be not only free from ambiguity but must exclude any other construction." This rule was quoted with approval in Shaw v. Wertz, supra, 369 S.W.2d at p. 218. The same rule applies to personal property bequeathed by a will. Housman v. Lewellen, supra, 244 S.W.2d at p. 24; Deacon v. St. Louis Union Trust Co., 271 Mo. 669, 197 S.W. 261, 265. The second sentence of "Article Second" of the will starts with the word "However," which modifies that which has gone before, i. e. the first sentence. Then in clear, concise and unequivocal language the testatrix provided that appellant's share should be paid to her in monthly instalments of $20.00 until exhausted, and that in the event of her death before her share was paid to her in the manner provided, the balance should go to her two sons. This necessarily means tha_ the testatrix intended that appellant's interest in the one-third share should be only for her lifetime, and that she was not to receive absolute ownership thereof. The devise and bequest in the first sentence were in general terms without the use of any qualifying words denoting the quantum of the estate. In clear and unambiguous language the testatrix then limited or defined the quantum of the estate she intended to convey to appellant, and under these circumstances her clearly expressed intent is to be given effect by the courts. See for example, Threlkeld v. Threlkeld, 238 Mo. 459, 141 S.W. 1121. We necessarily agree with the ruling of the trial court in this respect.

Appellant also contends that the trial court erred in holding that there was a valid trust provision because there are no ascertainable duties of the trustee as to the real estate or personal property, and for that reason she says "the attempted trust is dry."

We need not in this case enter into a detailed discussion of the effect of the Statute of Uses. Section 456.020 RSMo 1959, V.A.M.S. See generally 54 Am.Jur. Trusts §§ 9–14; 90 C.J.S. Trusts § 176; 1A Bogert, Trusts and Trustees §§ 206–208; and the introduction to the annotation at 165 A.L.R. 550. It may be said that by reason of the application of the above statute as to real estate, and by reason of the application of general principles of equity as to personalty, Vol. 1A Bogert, Trusts and Trustees, § 207, p. 293; Fisher v. Fisher, 203 Mo.App. 45, 217 S.W. 845, if there are no substantial duties to be performed by the trustee to carry out the purpose of the settlor the trust is declared to be passive or dry, and the legal and equitable title is

merged in the beneficiary. "For a trust to be active it is essential that the interposition of the trustee be necessary to carry out the valid puposes of the trust, the test being that, with respect to the control, protection, management, or disposition of the trust property, the trustee has imposed on him, expressly or by implication, some active and substantial duty to perform, or useful purpose to subserve, or has by virtue of his trust obligation some discretion to exercise, such as the investment or reinvestment and care of property; * * * or the receipt and payment over of the rents, income, profit, or proceeds of the trust property to, or for another with, remainder over; or the preservation of estates for those in remainder; or the protection of the estate for a given time or until the occurrence of a certain event; or the conveyance of the trust property to the beneficiary or beneficiaries after a life estate or the happening of some specified event; * * *." 90 C.J.S. Trusts § 177; 54 Am. Jur. Trusts § 13. In this case the trustee is not to pay all the gross receipts to appellant but only a specified sum per month. See Vol. 1A Bogert, Trusts and Trustees § 206 at pp. 284–285 for the effect of this difference in duties. Therefore, the trustee necessarily has the implied duty to preserve the corpus of the trust. After making the specified payments to appellant he then has the duty to pay that portion of the corpus of the trust remaining, if any, to the specifically named contingent beneficiaries upon the occurrence of the stated event, the death of appellant. As was stated in Craig v. Kimsey, 370 Ill. 321, 18 N.E.2d 895, "If any agency, duty or power be imposed on the trustee, as to preserve contingent remainders * * * the operation of the Statute of Uses is excluded." See also In re Hickok's Will, 61 N.M. 204, 297 P.2d 866, where it was held that "where property is placed in trust for a term and the trustees at the expiration of the term are to divide the corpus among *contingent remaindermen,* the trust is an active one." In addition, see DiCarlo v. Licini, 156 Pa.Super.

363, 40 A.2d 127; Vol. 1A Bogert, Trusts and Trustees § 207, pp. 288–289; and the cases in 165 A.L.R. at pp. 558–559. In 54 Am.Jur. Trusts § 13, p. 31, it is stated that the test of whether a trust is active or passive, in terms of result, is whether the result will be different from what it would be if the trust were executed into a legal estate. In this case, if appellant had the legal estate the result would not be the same as when the trustee carries out the clearly expressed intent of the testatrix. Therefore, we conclude that the trust is active and is not void for the reason contended by appellant.

The judgment is affirmed.

BARRETT, C., concurs.

PRITCHARD, C., not participating.

PER CURIAM.

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court.

All of the Judges concur.