**Margaret KELLMANN, Transferee of the Estate of Elmer L. Kellmann, Deceased, Plaintiff,**

**v.**

**UNITED STATES of America, Defendant.**

**No. 66 C 397(3).**

United States District Court
E. D. Missouri, E. D.

March 22, 1968.

Neuhoff & Schaefer, Ralph R. Neuhoff, Jr., St. Louis, Mo., for plaintiff.

Veryl L. Riddle, U. S. Atty., John A. Newton, Asst. U. S. Atty., St. Louis, Mo., Elliott H. Kajan, U. S. Dept. of Justice, Washington, D. C., for defendant.

## MEMORANDUM OPINION AND ORDER

REGAN, District Judge.

This is an action, tried to the Court, to recover federal estate taxes paid by plaintiff as transferee of the estate of Elmer L. Kellmann, Deceased. Plaintiff is the widow of Elmer, who died testate on April 27, 1963. The sole controverted issue is whether the property interests passing to the widow under Elmer's will are nondeductible terminable interests which do not qualify for the marital deduction. The only facts we have are those which have been stipulated by the parties.

Elmer's will was admitted to probate November 29, 1963, at which time letters testamentary were issued to his brother Edward. The controversy arises out of Paragraphs II and III of the will, which read as follows:

"II.

All of the rest, residue, remainder of my estate, both real and personal, of whatever nature and kind and wherever situated, I give, bequeath and devise unto my beloved wife, Margaret Kellmann.

III.

For informational purposes and for the purpose of outlining my said wife's agreements she has heretofore agreed that she will continue in the joint operation of any farm owned by me at my death until such time as such farm may be sold by mutual agreement between my said wife and other owners of such farm and in addition she has agreed that if I predecease her she will make a Will which provides that seventy-five (75%) per cent of any property held by her at her death shall be bequeathed to my brother, Edward Kellmann, or his heirs, and she shall be free to dispose of the other twenty-five (25%) per cent of her holdings to those of her family as she shall choose. She has further agreed that in the event of her remarriage no portion of any property that she may inherit from me may be applied for the benefit of, given to, or used for her husband. My wife's signature and consent attached hereto shall be evidence of this agreement between us."

Edward, as executor, filed a federal estate tax return on July 8, 1964, and paid the tax "as computed thereon" on March 19, 1965. Final distribution to plaintiff of the property of decedent of the net value of $355,545.02 was ordered by the Probate Court. Thereafter, the district director of revenue determined that of the total marital claim of $179,637.93, the estate was not entitled to $168,144.80, and as a result of this adjustment and others, assessed an estate tax deficiency against plaintiff as transferee of the assets of the estate in the amount of $46,587.42, plus assessed interest in the amount of $3,211.98, a total sum of $49,799.40. Plaintiff paid the deficiency assessment and then filed a claim for refund, which was disallowed in full. This action, filed pursuant to

Section 1346, 28 U.S.C. followed. It is the position of defendant that under the will Elmer created an estate for life in his surviving spouse with limited power over the devised estate, so that the interest which she received thereunder was a nondeductible terminable interest. Plaintiff contends she received a fee simple estate which qualifies for the marital deduction.

The parties are in agreement that here, as in Bookwalter v. Lamar, 8 Cir., 323 F.2d 664, 667, "the crux of this controversy centers upon the nature, extent and character of the interest under Missouri law which passed to decedent's widow under his will at the precise moment of his death." As stated in defendant's brief, the question "is whether the interest which passed to decedent's spouse *at the precise moment of death* would terminate or fail on the occurrence of some event or contingency, or on the failure of any event or contingency to occur, thereby allowing the residue to pass from the decedent to his brother or others without consideration."

■ We start with the settled doctrine of Missouri courts that all technical rules of will construction are subservient to the paramount rule that the intention of the testator shall control unless it violates an established rule of law. Commerce Trust Company v. Weed, Mo., 318 S.W.2d 289, 294. See section 474.430, V.A.M.S. The true intent and meaning of the testator must be determined from the entire will, and not from single words, passages or sentences. Shaw v. Wertz, Mo., 369 S.W.2d 215, 217; Farkas v. Calamia, Mo., 373 S.W.2d 1; Buschmeyer v. Eikermann, Mo., 378 S.W.2d 468; Prior v. Prior, Mo., 395 S.W.2d 438. All parts of the will must be considered and harmonized, if it is legitimately possible to do so. Weiss v. St. Louis Union Trust Co., Mo. App., 142 S.W.2d 1103.

■ Paragraph II is not, as defendant argues, "in and of itself ambiguous." On the contrary, Missouri cases make it abundantly clear that by the language of Paragraph II "in and of itself" Elmer unquestionably conveyed to plaintiff an absolute title to his property. Shaw v. Wertz, Mo., 369 S.W.2d 215, 218, Farkas v. Calamia, Mo., 373 S.W.2d 1, 2; and Thompson v. Smith, Mo., 300 S.W.2d 404, 406.

In *Shaw*, the Missouri Supreme Court said, "In this case, by the language 'I * * * do Will and Bequeath all the remainder of my property of whatsoever nature, to my beloved wife, Mrs. Clara M. Mellott-nee Roy,' the testator would unquestionably have conveyed a fee simple title to his wife if he had there stopped."

In *Farkas*, the first sentence of Article Second of the will provided, "All the rest, residue and remainder of my estate, both real and personal, and wherever situated, I hereby give, bequeath and devise unto my three children, Calogero Calamia, Gregorio Calamia and Mary Jane Farkas, to be divided between them equally share and share alike." In ruling the case, the Missouri Supreme Court stated, "By the first sentence of 'Article Second,' if the testatrix had there stopped, she would have devised fee simple title to appellant of an undivided one-third interest in the real estate and would have bequeathed to her absolutely an undivided one-third interest in the personal property."

In the will construed in *Thompson*, the language of the Second paragraph was almost identical to that of Paragraph II of Elmer's will. The Court stated that "if the paragraph were considered alone, [it] would be understood as expressing the intention of the testator to devise an absolute estate to his wife."

■ Hence, the meritorious issue in this case is whether, under Missouri law, Paragraph III cuts down the fee interest in Elmer's property which he would have devised and bequeathed to plaintiff by Paragraph II "in and of itself." The rule followed in Missouri is that the devise of a fee cannot be annulled or excised except by subsequent

language in the will "which expressly or by necessary implication, arising from words *equally as clear and conclusive as those in granting the absolute title* cuts down the previous grant of absolute title." Housman v. Lewellen, 362 Mo. 759, 244 S.W.2d 21, 24. That is, "[a] fee simple estate granted by devise or bequest in a will, may not be cut down or limited by a subsequent ambiguous provision." Gehring v. Henry, Mo., 332 S. W.2d 873, 877. And Vaughan v. Compton, 361 Mo. 467, 235 S.W.2d 328, 331, (quoted with approval in *Farkas* and *Shaw,* supra) emphasizes that before a limitation over can be found, such limitation "must be not only free from ambiguity but must exclude any other construction."

■ We hold that the language employed in Paragraph III fails to meet the foregoing test, and is ineffective to reduce the quantum of the estate devised and bequeathed to plaintiff in Paragraph II.

Paragraph III simply outlines, "for informational purposes", certain agreements purportedly made by plaintiff and Elmer. The stipulated facts do not inform us as to whether such agreements were in fact made. So far as we are aware, plaintiff's "signature and consent" were never attached to the will as probated, and there is no other evidence before us of the existence in fact of any of the "agreements" outlined in Paragraph III. However, the parties have argued this case on the assumption that a binding contract had been entered into between Elmer and his spouse. If so, it would appear that the rights of the parties, including those of third-party beneficiaries, are derived from the contract, not from the will.

The "contract", as outlined for informational purposes in Paragraph III, actually contains three "agreements" on the part of plaintiff, the first relating to the farm and the third to the event of plaintiff's remarriage. The second agreement, and the one relied on in support of defendant's contention that the interest bequeathed to the wife is a life estate and terminable interest, is to the effect that if Elmer predeceases plaintiff, she will make a will bequeathing 75 per cent of "any property held by her at her death" to Edward or his heirs, but will be "free" to dispose of the remaining 25 per cent of "her holdings" to "those of her family as she shall choose."

Elmer's choice of language is significant. The agreement is not limited to nor does it necessarily include any of the property which was owned by Elmer or which he bequeathed to plaintiff. It specifically relates to *any* property which plaintiff might own *at the time of her death.* We are not advised as to whether plaintiff had a separate estate or property of her own, but the language employed in the will clearly implies that such was the fact. It is to the effect that "if I predecease her", plaintiff will make the will to the effect agreed upon. This clearly implies that plaintiff is not otherwise to be bound by the prior agreement to will any of *her* property in the manner specified except only in the event Elmer predeceases her.

When Elmer intended to refer to his own property, he used language apt for that purpose. Thus, in the first of the three "agreements" he made reference to "any farm owned by me at my death." In the third agreement, he spoke of any property which plaintiff "may inherit from me." However, in the major agreement sandwiched between the other two, he used general language which applied to *any* property, however title was derived, which plaintiff may own at the time of *her* death. It is therefore conceivable (depending on the extent of plaintiff's holdings) that even if plaintiff did not dispose of the property which has been distributed to her in Elmer's estate, she could comply with her agreement without bequeathing to Edward or his heirs any of the property originally owned by Elmer. As for the remaining 25 per cent, we believe that defendant has misconstrued the clear

purpose and intent of the agreement. The purpose was not to obligate plaintiff to bequeath that percentage of her holdings to "those of her family as she shall choose", but rather to assure that she would be "free" to do so if she should so decide, that is, that nothing in the contract would preclude her from doing so. (The record is silent as to whether any member of plaintiff's family was still living at the time of Elmer's death.)

We are further convinced that plaintiff is not precluded by the terms of the contract from disposing of any of Elmer's property during her lifetime. The very fact that the agreement pertains to "any property held [by plaintiff] *at her death*" strongly indicates Elmer's "intention and recognition that his wife should have the right to use, exhaust, and dispose of the devised property without restriction." Thompson v. Smith, Mo., 300 S.W.2d 404, 407.

Defendant has cited a number of cases involving testamentary language and factual situations wholly unlike those of the instant case, and in some of which the intent of the language was arrived at with the aid of the background facts and circumstances in the light of which the will was written. Essentially, these cases involve the construction of bequests in conjunction with which a disposition was made of that portion of the bequeathed property which remained at the death of the first legatee. All of these cases, including the one most relied upon, Blumer v. Gillespie, 338 Mo. 1113, 93 S.W.2d 939, are distinguishable on their facts, and the more recent Missouri cases have questioned their correctness. See for example, Thompson v. Smith, supra, and Housman v. Lewellen, supra. We believe it sufficient for present purposes to note that the language here in question makes no reference to any of the bequeathed property which remains at the death of plaintiff, but rather speaks of plaintiff's *holdings* at *that* time, which may or may not include the bequeathed property. Defendant argues

that the first and third agreements do in fact constitute restrictions on plaintiff's right to dispose of the property bequeathed to her. Insofar as the first agreement is concerned, it clearly recognizes that plaintiff has the right to sell the farm as her property and imposes no restriction on her use of the proceeds of any such sale. In any event, nothing therein even purports to give any legal *interest* in the farm or its proceeds to Edward or otherwise reduce the quantum of the estate granted to plaintiff. The implication is simply that plaintiff and Edward will continue for a reasonable period of time the partnership in the dairy business which had theretofore been conducted by Elmer and Edward. The agreement is completely silent as to the effect of a breach of contract on the part of plaintiff, there being no limitation over if she should sell the property otherwise than by mutual agreement with Edward.

It is true that by the third agreement plaintiff has agreed that in the event of her remarriage no part of Elmer's property "may be applied to the benefit of, given to, or used for her husband." Wholly apart from the validity, enforceability or effect of this understanding with Elmer, its major significance is Elmer's clearly expressed recognition that by reason of the bequest made in Paragraph II, his wife has the right "to use, exhaust or dispose of", in any way she might see fit, even by gift, the property she thereby "inherits" from him. If Elmer had intended that plaintiff have no right to give away or otherwise dispose of the property "inherited" from Elmer, there would be no occasion for a limited explicit agreement that she would not give any of the property to any newly acquired husband. Here, too, the agreement is silent as to the effect of a breach and there is an entire absence of any gift over should plaintiff attempt to give away or otherwise apply any of Elmer's property for the benefit of a second husband. We are convinced, therefore, that insofar as concerns the fee in-

terest bequeathed to plaintiff by Paragraph II "in and of itself", nothing in the contract outlined in Paragraph III discloses an intention on the part of Elmer to reduce that fee to a life estate with remainder over, 75 per cent to Elmer and 25 per cent to plaintiff's family. On the contrary, Paragraph III reveals the knowledge of the testator that having given all his property to plaintiff there was no specific or "certain property in which he could dispose of an interest in remainder to his heirs" or otherwise. Thompson v. Smith, supra, 300 S.W.2d, l.c. 407. The dominant purpose of Paragraph III is, as it states, simply to inform those interested as to the understandings between plaintiff and Elmer.

If in fact no enforceable contract was entered into, the result is no different. The language of Paragraph III discloses no intent to cut down or annul the fee granted by Paragraph II. Rather, it indicates no more than Elmer's hope and wish (as distinguished from a mandatory requirement) that his wife would agree to the provisions thereof. Else why did he state "My wife's signature and *consent attached hereto* shall be evidence of this agreement between us." Certainly, the language therein does not clearly, unambiguously and unmistakably cut down the previous grant of absolute fee simple title.

We have been cited to no Missouri cases involving similar facts. We believe, however, that our construction of the will is in harmony with the rules of construction applied in Missouri. Cf. Estate of Vermilya v. Commissioner (1963) 41 T.C. 226, (involving Minnesota law) and First National Bank of Janesville v. Nelson, D.C.Wis., 233 F. Supp. 860, affirmed, 7 Cir., 355 F.2d 546, (involving Wisconsin law).

It must not be overlooked that under Missouri law (there being no lineal descendants) plaintiff was entitled to one-half of Elmer's estate subject to payment of claims (Section 474.160 V.A.M.S.), in addition to exempt property (Section 474.250 V.A.M.S.), and an allowance for a year's support (Section 474.260 V.A.M.S.). This she could not be deprived of unless she failed to timely elect to renounce the will (Section 474.160 V.A.M.S.). The statutory provision would have qualified for the marital deduction.

In view of the ambiguous language employed in Paragraph III it does not seem reasonable that plaintiff should have been put to an election to take the statutory one-half of Elmer's estate on the speculative possibility (which obviously did not occur either to her or to Edward) that a court would hold her interest was a life one only. Although the Probate Court in its order of distribution has in effect reached the same conclusion that we have, we do not rely to any extent on that fact or give any weight thereto (Commissioner of Internal Revenue v. Estate of Bosch, 387 U.S. 456, 87 S.Ct. 1776, 18 L.Ed.2d 886), although it would appear significant that the only other major party in interest, Elmer's brother Edward, was the executor of the will and he petitioned for, or at the very least acquiesced in, the construction made by the Probate Court. No claim of collusion is made.

We hold that the interest which passed to plaintiff under Elmer's will was a fee simple title and that the property so left to plaintiff qualifies for the marital deduction. Stated otherwise, such property is not disqualified for the marital deduction as a terminable interest.

We adopt the stipulated facts as our findings, and this opinion constitutes our conclusions of law. It follows that plaintiff is entitled to judgment. Pursuant to the stipulation, the parties are directed to compute the amount for which the judgment is to be entered, and in the event of their inability to so agree, a further hearing will be conducted to determine the amount of the judgment. The parties are directed to report to the Court within 30 days.