**In re the Marriage of Kerry K. (White) PENNEY, Appellant,**

v.

**Garry (Gary) L. WHITE, Respondent.**

**No. KCD 30341.**

Missouri Court of Appeals, Western District.

Feb. 4, 1980.

Timothy A. McNearney, Independence, for appellant.

James S. Cottingham, Independence, for respondent.

Before SHANGLER, P. J., and SWOFFORD and CLARK, JJ.

SHANGLER, Presiding Judge.

The wife brought a motion to show cause why the husband should not be held in contempt of court for willful failure to comply with an order of child support. The husband responded by motion to modify the decree of dissolution by an order to decrease the obligation for child support. In the course of proceedings, the parties submitted to the court for construction the property settlement agreement concluded by them as incident to the dissolution.

The court adjudged that the wife and husband [both since remarried] had settled and compromised the past-due child debt and that the husband owed the wife no arrears as of the date of trial. The court adjudged reduction of child support from $200 to $150 per child per month and that the husband make payment through the Court Administrator. In effect, the court denied remedy to the wife and granted remedy to the husband. The court declared the property settlement agreement to be ambiguous and construed the terms in a manner detrimental to the wife. She appeals from these adverse orders.

The dissolution was adjudged in 1973. Custody of the two children, one male and one female, and $200 per child per month for their support were awarded the wife. [The husband and wife have since each remarried.] Soon after the entry of judgment the husband became delinquent and the support payments continued fitful so that by the time of hearing, he was $5,250 in arrears. In 1974, the wife resorted to the Jackson County Prosecutor to help collect the $1,200 support money then due. The husband responded with an $800 remittance. The wife expressed displeasure to the prosecutor with the fragmentary collection and had decided to engage private counsel for further collection when the husband made additional remittances.

Then, in December, 1974 [apparently while the matter still pended before the prosecutor], the husband simply told the wife by telephone that he intended to pay $250 each month rather than the full $400 support obligation. The wife remonstrated, but she was desperate and so did not resist. From then on the husband remitted, albeit irregularly, $250 to $275 per month as child support money. The wife acknowledged she received these amounts but without agreement to forgo the full award of the court. The husband did not refute this evidence and gave no account for his delinquency.

On this evidence the court adjudged that the husband and wife settled and compromised the past-due child support obligation and, accordingly, exonerated the husband of willful noncompliance with the judgment.

An order for child support encompassed in a decree of dissolution and owed by one spouse to another becomes a judgment debt. And, as with any other debt, a past-due judgment may be settled or compromised by the parties upon adequate consideration. *Kennedy v. Kennedy*, 575 S.W.2d 833, 835[3–4] (Mo.App.1978). Such an accord and satisfaction is an affirmative defense which the proponent [the husband here] has the burden to prove. *Karleskint v. Karleskint*, 575 S.W.2d 845, 846[1–5] (Mo. App.1978). The husband made no plea to the motion of the wife to adjudge him in contempt for willful disobedience to the order of the court to make payment.[1] The

---

1. A motion to show cause against a party charged with a judgment for child support—although ancillary to the dissolution acion—is as a petition in an original proceeding. *Jafarian-*

evidence given by the wife of the initiative of the husband for reduced support payment cannot be understood to have introduced the defense of accord and satisfaction, but rather was meant as another proof that the failure of the husband to comply with the judgment was contumacious. The proof on that issue, although from the wife alone, was redundantly emphatic: "I was desperate at the time, and I wasn't going to refuse some money"; "I wasn't going to not accept it because it wasn't the four hundred dollars a month, you know." The wife asserted repeatedly that she never agreed to the lesser payment nor waived any balance on the judgment. The husband offered neither refutation nor other justification for his delinquency. Whether or not the defense of accord and satisfaction was legitimately before the court, there was no evidence to sustain the judgment that the parties settled and compromised the past-due child support.

 *Rodgers v. Rodgers*, 505 S.W.2d 138 (Mo.App.1974) cited by the court in the memorandum of judgment does not support the adjudication. That case found an intention to compromise and settle past-due child support from the admission of the wife that the purpose of her proceeding against the husband was not for past-due payments but for an increase in the original allowance to meet increased needs of the children. The wife in *Rodgers* was found to have used the delinquency of the husband to deprive him of visitation and to lull him by her ostensible disinterest. Thus, the judgment in *Rodgers* was sustained on acquiescence and other equitable principles soundly exercised by the trial court. The evidence before us, however, prompts no equity for the husband. The insistence of the wife for compliance with the judgment was tenacious and unabated. When the husband became delinquent she resorted to the prosecutor. It was only when that office informed her that the $800 recovered by them was "all that [the husband] had," that the wife decided to accept what he could give. A party is bound by an accord and satisfaction only by a well-understood and concluded agreement to settle all demands in dispute. Payment of part of a debt does not satisfy the whole debt in the absence of an agreement supported by a consideration. *Sturmville Lumber Company v. Davis*, 416 S.W.2d 49, 50[1–5] (Mo.App.1967); *Kennedy v. Kennedy*, supra, l:c. 834[1–4].

No substantial evidence supports the premise of the judgment that the parties came to an accord and satisfaction agreement of the past-due child support judgment on a consideration. *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). The wife was entitled to judgment on her motion for the $5,250 delinquency established by the evidence uncontested by the husband. The other orders on that motion— designation of the Court Administrator as trustee to receive the child support payments on behalf of the wife and the grant of permission to her to remove the children to Colorado where the present husband was posted—are not contested and remain in effect. Nor does the wife appeal from the denial of a judgment of contempt against the husband.

*Kerman v. Jafarian-Kerman*, 424 S.W.2d 333, 341[14–17] (Mo.App.1967). Where, as here, the contempt proceeding is brought to enforce a civil remedy, it assumes an adversary aspect which affects substantial rights and is subject to appeal. *In re Blankenship*, 553 S.W.2d 307, 308[1, 2] (Mo.App.1977). In cases of civil contempt to coerce the compliance of the relief adjudged, the accusation against the contemnor issues by notice and opportunity for defense. *State ex inf. Crow v. Shepherd*, 177 Mo. 205, 76 S.W. 79, 89 (banc 1903). In this case, no order, citation, or other notice—other than the motion itself—issued against the husband. See, *Jafarian-Kerman*, supra, l.c. 336. The husband appeared and the court received evidence on the motion to adjudge him for contempt. No doubt, in order to adjudge for contempt, a court must have jurisdiction over the subject matter and the person. *White v. Hutton*, 240 S.W.2d 193, 200[5–10] (Mo.App. 1951). The husband does not raise the question as to how the failure to formally cite him for the contempt on which evidence was heard affects the judgment [See, *Thompson v. Farmers' Exchange Bank*, 333 Mo. 437, 62 S.W.2d 803, 811[16–21] (1933)], nor does the wife raise the question how the court could adjudicate the affirmative defense of accord and satisfaction without a plea by the husband. See, Rule 55.-08.

The court sustained the separate motion of the husband to reduce the child support obligation from $200 to $150 per child per month. The husband made proof that since the entry of the original award in 1973 his earned income went into steady decline. From that date, when the profits from his construction business for that year were $30,000, his income reduced steadily to about $9,000 annually. The husband attributed that event to the radical inflation and attendant rise in the interest rate which made the cost of such construction less predictable and the profit less secure. There was evidence that he had purchased through the construction company account an expensive Continental automobile, but the husband explained that those funds derived from his present wife. He explained, also, that the home which he occupied—appraised at $110,000, but subject to a $65,000 mortgage—was merely a show home for sale. Other loan documents submitted to the bank by the husband recited the net worth of the construction company at $4,050. There was other evidence that the husband lived extravagantly and took frequent trips to Las Vegas to cavort and gamble. There was testimony also that the former wife was steadily employed during that period at a $10,000 annual wage. She had relinquished that position at the time of hearing because of an expected child, to give her time to her children, and because her present husband had been relocated to a legal post in Colorado. The court chose to draw from the evidence inferences favorable to the position of the husband. The judgment to reduce the child support rests on substantial evidence. *Murphy v. Carron,* supra, l.c. 32[1–3].

One issue remains. The parties presented to the court at pretrial conference, without prior pleading or other formal initiative, the construction of the property settlement agreement concluded by them antecedent to the dissolution. The preamble to agreement declared the purpose as a mutual desire, in view of the pendent dissolution proceeding, "in all respects [to] settling their property rights between themselves *so that neither party hereafter may have any claim against the other because of the marital relations existing between [them]."* [Emphasis added.] The agreement then set off to each party the owned personal effects to which the other party released any claim. The wife assigned and conveyed to the husband all interest in a building lot and two homes under construction and to a jointly-held automobile. The husband assigned and conveyed to the wife all interest in the household goods [with some exception] installed at the residence and [by paragraph 2, the provisions submitted for judicial construction]

> all of his right title and interest in and to the real estate including the home and improvements located thereon [at the residence] presently owned by said parties as tenants by the entirety to [the wife] by Special Warranty Deed. The parties agree that the approximate market value of said real estate and improvements is $42,000 subject to an encumbrance [of] approximately $28,000 all of which the [wife] agrees to assume and pay. Said property shall be held by [the wife] and that upon the sale of the property by [the wife] or her remarriage, [the husband] requests that *his equity conveyed herein be held by the [wife] in trust for their children.* [Emphasis added.]

The court concluded that paragraph 2 of the agreement was "at least ambiguous and at most a nullity," determined that the parties "did agree as to an exact amount of [the husband's] interest in the equity of the family residence [and] [b]ecause of the ambiguity" awarded the husband absolutely $7,000 from the proceeds of any sale of the residence. The memorandum of judgment does not describe the language the court construes nor what renders it vague. Nor does the entry describe the evidence which resolves the ambiguity to justify the judgment reached.

The briefs and evidence disclose that the uncertainty the parties seek to dispel results from the apparent vagueness of the sentence which concludes the paragraph: that the

"property shall be held by [the wife] and that upon the sale of the property by [the wife] or her remarriage, [the husband] requests that *his equity conveyed [t]herein be held by [the wife] in trust for their children.*" [Emphasis added.]

The parties agree that those terms intend that, on the contingency of the sale of the family home or her remarriage, the equity of the husband at the time of transfer [stipulated at $7,000] be held by the wife in trust for their children. The parties disagree as to the purposes of the trust. The wife testified the funds were to provide for the higher education of the children. The husband understood the terms to mean that on either contingency, "the seven thousand dollars would be applied, *either towards the child support,* or put in a trust fund for the kids." [Emphasis added.] The husband contends also that there was no intention to create a present trust but only to contract for a trust, which failed for want of consideration. Thus, the parties assume an ambiguous contract and we review on that trial theory.

 The meaning of an ambiguous contract is determined in light of the extrinsic circumstances. *O'Brien v. Missouri Cities Water Company,* 574 S.W.2d 13, 19[4, 5] (Mo.App.1978). The testimony as to the property, persons and events to which the uncertain language relates then becomes relevant to disclose the true meaning intended by the contractors. 1 Corbin, Contracts § 101, p. 459 (1959). The defect may be dispelled also by the practical construction the parties give the undertaking by their own subsequent conduct. *Leggett v. Missouri State Life Insurance Company,* 342 S.W.2d 833, 852[14–18] (Mo. banc 1960).

The only extrinsic evidence presented to the court on the ambiguity was the testimony of the wife and the husband. She assumed, without discussion, that the conveyance of his equity in the home property was for college instruction for the children. The trust device was to accomplish that single purpose. The testimony of the husband was brief: he "understood" at the time the agreement was executed that the

$7,000 "would be applied, either towards the child support, or put in a trust fund for the kids." The husband asserted he had no conversation with the wife antecedent to written agreement—"[t]his was handled by the lawyers." In actuality, then, the only extrinsic circumstance as to a mutual intention to create a trust was testimony of each declarant party. In *neither* testimony, however, was the language understood [as did the trial court] to express intention that the equity conveyed to the wife for the benefit of the children was reserved—on any contingency—to the ownership of the husband.

 The unconditional award by the court of $7,000 to the husband rests on no explicit ground and befuddles the evidence. There was neither issue nor proof that the husband claimed a retained ownership in the equity conveyed to the wife. The award of the court on that implicit premise, therefore, was coram non judice and without effect. *Northwest Missouri State Fair, Inc. v. Linville,* 448 S.W.2d 274, 278[6, 7] (Mo.App.1969).

The husband justifies the judgment as a species of restitution. He contends that paragraph 2 of the property settlement agreement was merely a contract to create a trust which failed for want of a proper consideration: namely, the want of duty of the trustee to perform. On this theory, the declaration of trust lapsed into a "passive trust" and the res was properly restored to the putative settlor. The syllogism is flawed. We assume the postulate of argument [despite the absolute conveyance by deed to the wife concurrently with the contract of agreement] that the property settlement transaction was a *promise* to create a trust—rather than the formulation of a present trust—and therefore valid only on consideration. [See, 1 Restatement (Second) of Trusts §§ 23 through 30 (1959)]. We assume, also, that the consideration which supports a contract also supports a promise to create a trust. *Taylor v. Welch,* 168 Mo.App. 223, 153 S.W. 490, 493[3, 4]. (1913); Bogert on The Law of Trusts and Trustees, § 204 (Rev. 2d ed. 1979); Restate-

ment of Contracts, §§ 75 through 84. On these principles, the encompassed trust provision is supported by the same consideration of "mutual agreements" and "mutual exchange of property" recited for the integral undertaking.

 A valid express trust comes into being when a person with a present power of disposition over definable property reposes the legal ownership to that res in another for the beneficial use of a third person. *Edgar v. Fitzpatrick*, 377 S.W.2d 314, 317[3–6] (Mo. banc 1964); 89 C.J.S. *Trusts* § 9 (1955); Bogert, The Law of Trusts and Trustees, § 1 (2d ed. 1979). In order to create a trust the settlor must show intention to create a trust. That intention may be manifested by word or conduct, without regard to any particular terminology of trusteeship. If the words import the intent to establish a trust, they have that effect. *Masterson v. Plummer*, 343 S.W.2d 352, 355[2–6] (Mo.App.1961); 1 Restatement (Second) of Trusts §§ 23 and 24 (1959); Bogert on Trusts, § 11 (Hornbook Series, 4th ed. 1963). In the discernment of intention to settle a trust, the imperative or precatory character of the words used as well as the relations between the parties and the motives which influenced the settlor to disposition are circumstances for consideration. 1 Restatement (Second) of Trusts § 25, Comment b (1959).

 The usual terminology of trust directs a duty upon a trustee to act in that capacity. The expression used in the property settlement agreement is that of recommendation or entreaty: "[The husband] *requests* that his equity conveyed herein be held by [the wife] in trust for their children." [Emphasis added.] Such words of imprecation do not inherently import a legal obligation to the trustee—they advise and not direct. A trust may be created by precatory words, nevertheless, if the context of the instrument and the full circumstances show an intention to settle a trust and that the trustee act according to direction. Equity will declare a precatory trust only where the creation of the trust subserves the discerned intent of the set-

tlor. *Murphy v. Carlin*, 113 Mo. 112, 20 S.W. 786, 787 (1892); *Estill v. Ballew*, 26 S.W.2d 778, 779[3, 4] (Mo.1930).

The rationale for the rule is given full statement in 1 Restatement (Second) of Trusts § 25 Comment b (1959):

Precatory Words

No trust is created unless the settlor manifests an intention to impose enforceable duties.

\* \* \* \* \* \*

b. *Precatory words.* On the one hand, the settlor may manifest an intention to create a trust; on the other hand, his manifestation of intention may amount merely to a suggestion or wish that the transferee should use or dispose of the property in a certain manner, leaving it to the transferee to follow the suggestion or comply with the wish only if the transferee desires to do so. No trust is created if the settlor manifests an intention to impose merely a moral obligation. In determining the intention of the settlor the following circumstances among others are considered: (1) the imperative or precatory character of the words used; (2) the definiteness or indefiniteness of the property; (3) the definiteness or indefiniteness of the beneficiaries or of the extent of their interests; (4) the relations between the parties; (5) the financial situation of the parties; (6) the motives which may reasonably be supposed to have influenced the settlor in making the disposition; (7) whether the result reached by construing the transaction as a trust or not a trust would be such as a person in the situation of the settlor would naturally desire to produce.

The predominant circumstance which removes the doubt and determines the intention to create a trust for the children is the very nature of the transaction which encompasses the precatory clause: a property settlement agreement in contemplation of a family dissolution. The question of a trust intention from precatory words usually arises from testaments and other unilateral dispositions. [For instance, *Noe v. Kern*, 93

Mo. 367, 6 S.W. 239 (1887); *Murphy v. Carlin*, supra; *Housman v. Lewellen*, 244 S.W.2d 21 (Mo. banc 1951); *Estill v. Ballew*, supra; and cases cited in Annot.—Precatory Trusts, 107 A.L.R. 896.] The sense and purpose of the trust provision of the property settlement agreement are manifest only as one component among the several of a *bargain* to settle, finally and completely, the marital rights between the husband—and, to the extent the law allows, to provide for the children. The trust provision, moreover, relates to a bargain otherwise fully performed. All the other transfers contracted for have been conveyed—even the fee to the home premises by the husband to the wife. The only provisional agreement—that the wife have custody of the two children and that the husband pay $200 per month per child for their support—was approved by the court on those terms.[2]

The extrinsic evidence shows that the husband intended, despite the supplicative words, to command that the equity from the sale of the home be taken by the wife as trustee for the children. This evidence fulfills the guides the law expects to prove an intention to impose enforceable duties of trust. 1 Restatement (Second) of Trusts § 25 Comment b, supra. The testimony of the husband concedes that at least one purpose of the conveyance of equity to the wife was as a trust fund for the children. Nor does he argue that the precatory words belie that intention. He contends only that the trustee is given no affirmative duty but only to formally hold the fund for the contingency of higher educational instruction for the children. In effect, the husband argues that no interest passed to the trustee because the trust was passive.

A trust may be active or passive. An active trust is where the trustee has a duty to perform in relation to the property which calls for an exercise of judgment or discretion. *Webb v. Hayden*, 166 Mo. 39, 65 S.W. 760, 762 (1901); 1 Restatement (Second) of Trusts, § 69. In such case, the trustee takes that legal title necessary to complete the original purpose of the trust. *Stephens v. Moore*, 298 Mo. 215, 249 S.W. 601, 604[4] (1923). A passive trust is where the trustee has no, or merely formal, duty in relation to the trust property. In such case, no interest passes to the trustee but the Statute of Uses [§ 456.020, RSMo 1978] executes the legal estate so as to vest immediately in the beneficiary. *Trautz v. Lemp*, 329 Mo. 580, 46 S.W.2d 135, 142[16, 17] (banc 1932). On the analogy of the Statute of Uses, and on separate principles of equity, a passive trust of personalty also is deemed executed.[3] *Farkas v. Calamia*,

2. The "understanding" of the husband that paragraph 2 of the settlement agreement intended that the $7,000 equity money be used generally *for the support of the children* as well as a trust for their future education is contradicted by the separate provision of paragraph 6 of the agreement that the child support in the suggested amount be an adjudicated obligation.

3. A passive trust of realty is executed by the Statute of Uses [§ 456.020, RSMo 1978]. The Statute of Uses is by its terms applicable to lands only and does not apply to personal property. [*Fisher v. Fisher*, 203 Mo.App. 45, 217 S.W. 845, 849[1] (1920); *State ex rel. Haines v. Tolson*, 73 Mo. 320 (1880); *Slevin, Trustee v. Brown*, 70 Mo. 176 (1862)]. A passive trust of personal property, on the analogy of the Statute of Uses, is executed by the separate principle that equity does not tolerate the continuation of a useless thing. See: Bogert on Trusts, §§ 45 and 46 [Hornbook Series, 4th ed.]. The encompassing principle which executes the beneficial interest under a passive trust into a legal estate is stated aptly in Jones v. Jones, 223 Mo. 424, 123 S.W. 29, 33 et seq. (1909):

Thus, if A. grants or bequeaths land to B. and his heirs in trust for C. and his heirs, the trustee, B., will take nothing in the land, but *the legal title*, as well as the beneficial use, *will vest immediately in C.; for the statute of uses*, so called, *executes the possession and the legal title in the same person to whom the beneficial interest is given* . . . This statute executes the use by conveying the possession to the use, and transferring the use into possession, *thereby making the cestui que use complete owner of the estate, as well at law as in equity. It does not abolish the conveyance to uses, but only annihilates the intervening estate* and turns the interest of the cestui que use into a legal instead of an equitable estate. A use, a trust, and a confidence is one and the same thing, and *if an estate is conveyed to one person for the use of, or upon a trust for, another, and nothing more is said, the statute immediately transfers the legal estate to the use, and no trust is*

373 S.W.2d 1, 3[5–8] (Mo.1963); 76 Am. Jur.2d, Trusts § 12.

No doubt the literal property settlement provision whereby the husband donates the $7,000 equity to the wife "in trust for the children" defines no duty of active management of the fund on the trustee and so declares only a passive trust. These terms, without more, would render the trusteeship *functus officio* and—despite the express words of trust—vest title to the res absolutely in the infant cestuis que trust by operation of law and equity. *Jones v. Jones,* supra, l.c. 33 et seq.; *Fisher v. Fisher,* supra, l.c. 849[1]; Bogert, Trusts and Trustees, § 207, pp. 44–45 (Rev. 2d ed. 1979).

■■■■ The subject of trust was a sum of money. The instrument of trust was a written contract to settle the property and domestic affairs antecedent to the dissolution of marriage. An express trust in personalty may be shown by, not only the declarations, but also the circumstances of the trust. *Prudential Insurance Co. of America v. Gatewood,* 317 S.W.2d 382, 388[3] (Mo.1958). An express trust in personalty may be established by parol. *Gwin v. Gwin,* 240 Mo.App. 782, 219 S.W.2d 282, 285[6–10] (1949). The strictures of proof imposed by the Statute of Uses and the Statute of Frauds for conveyances and trusts of real property do not appertain to personal property. *Jones v. Jones,* supra, l.c. 34. Thus, a trust in personal property may be shown not only from the circumstances but from the written and oral declarations of the principals. *Platt v. Huegel,* 326 Mo. 776, 32 S.W.2d 605, 606[1, 2] (1930). That is only to say that a court of equity will discern the intent of the trust and even supply a deficiency in the instrument of trust unless forbidden by a positive rule of law. *Smith v. Smith,* 194 Mo.App. 309, 188 S.W. 1111, 1115[4] (1916).

■■■■ The property settlement contract, which encompasses the trust, makes provision for the support of the children [subject to court order] as one aspect of the marital relation submitted to agreement. One clear purpose of that written instrument, therefore, is to make provision for the two infants of the marriage, then four and nine years of age, both by an adjudicated sum for support and by the sum given in trust to the mother as custodial parent. The written instrument delineates the one but not the other, yet both considerations are implicit in the integral agreement to settle "in all respects" any claim either may have against the other from the marital relation. The direction by the husband that "his equity conveyed herein be held by [the wife] in trust for their children" satisfies the requisites of an express trust: a competent settlor, a trustee, an ascertainable trust res, and sufficiently certain beneficiaries—except as to an active purpose. *Foster v. Friede,* 37 Mo. 36, 43 (1865); *Pollock v. Brown,* 569 S.W.2d 724, 729 (Mo. banc 1978). It is that very uncertainty that the husband and wife presented to the court for definition by their testimony. The parol evidence of each, acceded to by the other, was competent to explain, without contradiction of the written word, the duty they meant for the trustee but not expressed in the settlement contract. 3 Corbin on Contracts, § 543 (1960). In fact, such as it was, that testimony was the only extrinsic evidence on that element of trusteeship. The husband admitted, contrary to interest, that one of the purposes of the conveyance was "a trust fund for the kids." The testimony of both discloses that they did not personally negotiate that term of trust prior to execution of the written contract, but left it

---

created, although express words of trust are used. [Emphasis added.]

The contention of the husband that the court implicitly found the trust was passive, therefore, does not justify judgment to him for the $7,000 intended for trust. A determination that the trustee was given no active management duty of the trust res does not—contrary to contention—somehow nullify the grant so that

the property reverts to the putative settlor, but merely discards the intervention of the trustee and vests the property in the cestui que trust as though by a direct conveyance. In a word, a declaration of a passive trust conveys title to property as effectively as does a warranty deed. *Bondurant v. Raven Coal Company,* 25 S.W.2d 566, 573[15–18] (Mo.App.1929).

to counsel. The property settlement contract, devised for the husband and wife by counsel, therefore, expresses whatever duty of trust management was intended for the trusteeship. It may be that the very size of the fund committed to the wife "in trust for [the] children" suggests a purpose different from the adjudicated child support benefit, and thus a duty of management on the trustee. It may be also that designation of the custodial parent as trustee supports an inference of a duty of discretion upon the wife to use the fund for such extraordinary expenses as the cost of secondary education. These are only intimations, however, so that the text of the settlement agreement is no more conclusive as to trust purpose than the verbal testimony of the husband and wife. All the circumstances considered, we conclude that the trust provision intends no duty on the trustee for "control, protection, management, or disposition of the trust property," salient indicia of an active trust. *Farkas v. Calamia*, supra, l.c. 3[5–8].

The strict principles of the Statute of Uses which execute a passive trust of real property do not apply to personal property. *Slevin, Trustee v. Brown*, supra, l.c. 185; *Fisher v. Fisher*, supra, l.c. 849[2]. A passive trust in personalty is executed on equitable principles, and by the Statute of Uses only by analogy. *Farkas v. Calamia*, supra, l.c. 3[5–8]; Bogert on The Law of Trusts and Trustees, § 206, p. 39 (Rev. 2d ed. 1979). In exact theory, personal property given to a trustee uncoupled with a duty of management, passes to the cestui que trust under the rules of a passive trust even though the beneficiary be a minor incapable of such responsibility. *Fisher v. Fisher*, supra, l.c. 849. In actual practice, however, the personal property res of a passive trust vests only in one *sui juris* and rests in the interim with a duly appointed guardian from whom the beneficiary can compel conveyance of title upon maturity. *Slevin, Trustee v. Brown*, supra, l.c. 185; *Rector v. Dalby*, 98 Mo.App. 189, 71 S.W. 1078, 1080 (1903); *Fisher v. Fisher*, supra, l.c. 851; *Ottomeyer v. Pritchett*, 178 Mo. 160, 77 S.W. 62, 64 (1903).

The pragmatic test between an active and passive trust is: "if the trustee does what he is directed to do, [will] the result be different from what it would be if the trust were executed into a legal estate?" 76 Am. Jur.2d, Trusts § 13. The answer readily appears: the execution of the trust into a legal estate would vest the fund equally in the children for use for extraordinary needs during their dependency—as were an active trust declared.

The judgment on the motion of the wife for delinquent child support money is reversed with directions that the trial court enter a judgment for the wife and against the husband for $5,250.

The judgment on the motion of the husband to modify the award for child support to $150 per child per month is affirmed.

The judgment of the trial court for the husband for $7,000 on the joint motions of the husband and wife to construe the trust provision of the property settlement agreement is reversed and remanded with directions that the trial court enter a declaratory judgment that the trust provision declares a passive trust so that the $7,000 equity of the husband in the proceeds of sale of the residence property vests equally in the two children. The circuit court is further directed to order the $7,000 be delivered over to a duly appointed and qualified guardian of the estate of the two minor children to be used for their benefit equally.

All concur.