**McDANIEL TITLE COMPANY, Plaintiff,**

v.

**Sharon Kay LEMONS and Dale Lemons, Defendants-Respondents,**

and

**Patrick Dale Carnes, Dana Leeann Carnes and Joseph Scott Carnes and Amber Marie Carnes, Defendants-Appellants,**

and

**Bridget Kaylene Carnes and Marcus Dean Carnes, Defendants,**

and

**Paul Warren, Trustee, Defendant.**

**No. WD32142.**

Missouri Court of Appeals,
Western District.

Dec. 29, 1981.

Michael A. Knepper, Kansas City, for Patrick Dale Carnes and Dana Leeann Carnes.

Michael J. Svetlic, Duggan, Keleher & Svetlic, P. C., Kansas City, for Joseph Scott Carnes and Amber Marie Carnes.

P. Wayne Kuhlman, Liberty, for Sharon Kay Lemons and Dale Lemons.

Before MANFORD, P. J., and DIXON and NUGENT, JJ.

DIXON, Judge.

This appeal is from an order in an interpleader action by the six children of Sharon K. Lemons (formerly Carnes) and Bill Carnes. At issue are the rights arising under a property settlement agreement providing for the distribution of one-half of the proceeds of the sale of the marital home to the children.

The interpleader was instituted by McDaniel Title Company. McDaniel sought to interplead as defendants Sharon Kay Lemons (previously Sharon Kay Carnes) and Dale Lemons, Patrick, Dana, Joseph and Amber Carnes, Marcus Carnes, Bridget Carnes, and Paul Warren as trustee, to determine the merits of their conflicting claims to $15,584.69 received by McDaniel from the proceeds of a real estate sale. The order permitting interpleader is not in issue, nor the fees allowed the interpleader McDaniel.

The funds which are the subject of this action represent one-half of the purchase price from the sale of a residence owned by Sharon and Dale Lemons. The residence had previously been held by Sharon (Carnes) Lemons and Bill Carnes as tenants in common after their divorce. Patrick, Dana, Joseph, Amber, Bridget, and Marcus Carnes are the children of the marriage of Sharon (Carnes) Lemons and Bill Carnes. Their claim stems from the decree of dissolution of the marriage of Sharon (Carnes) Lemons and Bill Carnes which ordered the residence to be sold upon the happening of certain events. Under the decree, Sharon (Carnes) Lemons was to receive one-half of the proceeds and the other half was to be set aside in trust for the parties' minor children. Paul Warren was named as trustee for the children.

The marriage of Sharon (Carnes) Lemons and Bill Carnes was dissolved on February 19, 1975. The court incorporated the parties' property settlement agreement into the decree and awarded the marital home at 705 Morse in Liberty to both parties as tenants in common pursuant to the agreement. The wife was given the right to live in the house subject to the following provisions:

The wife agrees that so long as she resides in the home she will make the payments on the deeds of trust. The wife shall have the right to continue to live in the house so long as she remains unmarried and has custody of at least one of the unmarried minor children. At such time as the wife shall remarry or should no longer have custody of at least one unmarried minor child, the house shall be sold and the proceeds shall be divided as follows: One-half to the wife and one-half to Paul Warren, Trustee for the children born of the parties under the terms of the Trust set out in the next paragraph of this agreement.

5. If the Trust established in the preceding paragraph of this agreement comes into existence, then the Trustee shall have all the powers generally conferred upon Trustees by law. The Trustee shall extend and apply all or such portion as may be necessary of the net income and principal of the trust for the education, support, care, medical and surgical attention, sustenance and welfare of my children. Expenditures and application of income and principal may be made either directly or through the legal guardian of any such child during minority.

The wife was given custody of their six children and the husband was ordered to pay $100 per week for their support. Various difficulties between the husband and wife occurred. The husband became very delinquent on child support. Apparently there were efforts by the husband to purchase the property. The wife remarried in June of 1976, and the sale in question was apparently negotiated the fall of the following year.

Critical events occurred on November 30, 1977, the order here narrated is in the as-

sumed order that they logically must have occurred. The parties executed an agreement between themselves on that date, November 30, 1977, to modify their property settlement agreement. The agreement, which refers to the wife as "first party" and to the husband as "second party," states:

WHEREAS second party has not paid child support in accordance with the Court's Order and there is in arrears a sum in excess of $3900.00, and

WHEREAS the parties agreed in paragraph 4 of their Property Settlement Agreement to a division of the proceeds from the sale of their home which was owned by them during the marriage and located at 705 Morse Avenue, Liberty, Missouri, and the provisions of said paragraph 4 of that Property Settlement Agreement have not been carried out and no trust has at any time been established pursuant to the terms of said agreement, . . .

. . . . .

NOW THEREFORE the parties enter into the following covenants and agreements:

1. That the parties will execute a stipulation for modification of their divorce decree in the form of the stipulation attached to this agreement and will present the same to the Circuit Court of Clay County, Missouri for approval.

2. That the Property Settlement Agreement entered into between the parties prior to their dissolution of marriage will be amended to provide that the provisions for the sale of said real estate upon the remarriage of the first party herein shall be deleted and second party hereby agrees to convey by special Warranty Deed all of his undivided one-half interest in said property to first party in exchange for the release of past due child support by first party as hereinafter provided.

The circuit court entered an order on November 30, 1977 modifying the decree in certain respects. Custody of three of the children was awarded to the husband, leaving custody of the other three with the wife. Each party was ordered to pay to the other $50 per month for the support of the children. The order modifying the decree was silent as to the property.

Bill Carnes and his present wife, Rose Carnes, conveyed their interest in the home to Sharon (Carnes) Lemons by special warranty deed on that same date, November 30, 1977.

The home was contracted for sale in September, 1979. McDaniel Title Company issued a preliminary title report on September 27, 1979 with regard to the sale which specifically excepted any claims arising out of the dissolution of marriage from the title insurance. The oldest child was just past sixteen when the mother remarried and nineteen when the property was sold.

The Carl I. Brown Company loaned the money to the purchasers to buy the property, and as the first mortgagee requested that McDaniel Title Company delete that exception from the final policy. The sale by Sharon K. Lemons and her then husband, Dale Lemons, was closed as of December 19, 1979, with net cash proceeds due sellers of $31,078.45.

The Carl I. Brown Company, upon request, deposited $15,539.23 and $45.46 with McDaniel. McDaniel pleaded that this represented one-half of the net proceeds.

Although not explicit in the record, this deposit was apparently in response to the request to delete the exception in the title report. An attorney representing Sharon (Carnes) Lemons and Dale Lemons and an attorney representing Patrick and Dana Carnes and Paul Warren as trustee each contacted McDaniel to claim the proceeds from the sale of the residence. McDaniel then instituted this action in interpleader to determine the respective rights of the parties.

The parties have briefed and argued issues with respect to the nature of the trust and the effect of the November, 1977 stipulation and the trial court modification of the decree. Those issues need not be reached or decided in view of the scope of

review and the findings of fact and conclusions of law entered by the trial court.

Review of this appeal is governed by *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976), and particularly the mandate of *Murphy v. Carron* that appellate review requires reversal when the trial court has misapplied the law. The trial court declared in its conclusions of law "Marcus, Bridget, Dana, Patrick, Joseph, and Amber Carnes were not beneficiaries of the gratuitous third party contract." This conclusion undoubtedly flows from the argument that the respondent wife makes in her brief in this court, that the only third party beneficiary of the original property settlement was the trustee. This argument ignores the fundamental nature of a trust, the division of the legal and equitable title. It is beyond question that a contract to create a trust supported by a consideration is an enforceable contract. *Penney v. White*, 594 S.W.2d 632, 639 (Mo.App.1980); Restatement (Second) of Trusts § 30 (1959). It is in the very nature of the contract to make an express trust that there will be dual beneficiaries of the contract, the trustee as to the legal title and the beneficiaries as to the equitable title.

In the instant case, the children are donee beneficiaries of the contract contained in the property settlement; that agreement is supported by a consideration, the mutual promises and undertakings of the husband and wife. The *Penney* case provides an exact rationale of the decision required in this case. In *Penney*, the property settlement agreement was much less explicit and at best established only a passive trust. The husband in *Penney* urged that there was only a contract to create a trust. In response to that argument, the court said:

> We assume the postulate of argument [despite the absolute conveyance by deed to the wife concurrently with the contract of agreement] *that the property settlement transaction was a promise to create a trust*—rather than the formulation of a present trust—and therefore valid only on consideration. [See, 1 Re-

statement (Second) of Trusts §§ 23 through 30 (1959)]. We assume, also, that the consideration which supports a contract also supports a promise to create a trust. *Taylor v. Welch*, 168 Mo.App. 223, 153 S.W. 490, 493[3, 4] (1913); Bogert on The Law of Trusts and Trustees, § 204 (Rev. 2d ed. 1979); Restatement of Contracts, §§ 75 through 84. On these principles, the encompassed trust provision is supported by the same consideration of "mutual agreements" and "mutual exchange of property" recited for the integral undertaking.

*Id.* 594 S.W.2d at 638 (emphasis added in part).

That rationale and the authority cited support the conclusion that there was an enforceable contract to create an express trust for the benefit of the children contained in the original property settlement, and that they were, therefore, third party donee beneficiaries of that contract. The trial court's conclusion of law to the contrary is in error.

The property settlement agreement stated a condition precedent with respect to the contract to make a trust. The condition precedent was in the alternative, either the remarriage of the wife, or the attainment of majority by the youngest child. The first alternative of this condition precedent *accrued before any attempted modification*, the wife's remarriage being some seventeen months prior to the November, 1977 agreement. Although the trust could not arise in the proceeds of the sale of the property until its sale, there was a fixed duty under the contract to sell the house and create the trust. The event of remarriage was within the control of the wife. The duty to sell was not subject to any variation, but was simply an obligation of contract, unperformed. The rights of the children were fixed by the agreement when the wife remarried.

Thus, the situation at the time of the attempted modification in November, 1977, was the existence of a third party donee beneficiary contract with "present performance by a promisor(s) obligatory" in the

language of Restatement of Contracts, Explanatory Notes, § 250, comment c at 361 (1932).

■ The precise issue then becomes whether or not the husband and wife had any power to rescind the agreement as they purported to do by the November, 1977, agreement. At common law, the parties to a third party beneficiary contract could rescind it at any time before the third party beneficiary accepted, adopted, or acted upon the contract, but where the contract had been accepted or acted upon by the third party beneficiary, it could not be rescinded by the principal parties without the consent of the beneficiary. Annot., 97 A.L. R.2d 1263 (1964). Restatement of Contracts § 142 (1932) stated a broader rule for third party donee beneficiaries.

§ 142. VARIATION OF THE DUTY TO A DONEE BENEFICIARY BY AGREEMENT OF PROMISOR AND PROMISEE.

Unless the power to do so is reserved, the duty of the promisor to the donee beneficiary cannot be released by the promisee or affected by any agreement between the promisee and the promisor, but if the promisee receives consideration for an attempted release or discharge of the promisor's duty, the donee beneficiary can assert a right to the consideration so received, and on doing so loses his right against the promisor.

This broad statement of principle has been criticized as beyond the case law, as applied to donee beneficiary contracts as a whole. Annot., 97 A.L.R.2d 1263 at 1265 (1964).

Restatement (Second) of Contracts § 142, (Tent.Draft No. 3, 1967), retreats from that position and changes the nomenclature of beneficiaries to intended or incidental beneficiaries. Under that 1967 draft of the Restatement, there must be assent by the beneficiary or a change of position in reliance upon the agreement before modification is barred.

Tentative Draft No. 3 thus seemed to return to the common law principles. Included in the cases decided at common law were cases which presumed the assent of a minor donee beneficiary and therefore made the contract irrevocable by the parties if the donee beneficiary was a minor. In *Spates v. Spates*, the Court of Appeals of Maryland, reported at 267 Md. 72, 296 A.2d 581 (1972), reviewed this authority as follows:

What takes this case out of the majority rule, as adopted by the Restatement (Second), Contracts § 142 (Tent.Draft 1967), however, is that Robert was 17 at the time the agreement of separation and property settlement was entered into. There is substantial authority for the view that once an infant is made the donee beneficiary of a contract between a promisor and promisee, his acceptance of the benefit is assumed, and his rights under the contract are indefeasible, unless he rejects the benefits, or a right to alter the provision made for him has been reserved, 2 Williston, *supra* § 396, at 1067; *see* 4 Corbin, *supra* § 814, at 247 (1951, Supp.1971, at 97–98) and Restatement (Second), Contracts § 142, comment d, at 60 (Tent.Draft No. 3, 1967). There is what Williston terms "weighty authority" in support of this view: *James v. Pawsey*, 162 Cal.App.2d 740, 328 P.2d 1023, 1028 (1958); *Waterman v. Morgan*, 114 Ind. 237, 16 N.E. 590, 592 (1888); *Henderson v. McDonald*, 84 Ind. 149, 153 (1882); *Rhodes v. Rhodes*, 266 S.W.2d 790, 792–793 (Ky.1953); *Quinn v. Thigpen*, 266 N.C. 720, 147 S.E.2d 191, 194 (1966); *Thayer v. Thayer*, 189 N.C. 502, 127 S.E. 553, 555, 556 (1925); *Plunkett v. Atkins*, 371 P.2d 727, 731–732 (Okl.1962); *Brill v. Brill*, 282 Pa. 276, 127 A. 840, 843 (1925); Anno., 39 A.L.R. 434, 448–449 (1925); Note, Third Party Beneficiary Concept: A Proposal, 57 Colum.L.Rev. 406, 420 (1957), and little authority to the contrary, *Lehman v. Stout*, 261 Minn. 384, 112 N.W.2d 640, 646 (1961); *Plott v. Kittelson*, 58 N.D. 881, 228 N.W. 217, 221–222 (1929).

The next development was the recognition in Restatement (Second) of Contracts, § 311 (1979), that the presumption of assent

by an infant beneficiary in some cases did not provide equitable results. Under the rule that an infant's assent was presumed, a parent who provided for a child in a contract which did not contain a power to vary the benefit for the child would be barred from changing the provision, even if other children were born. Many family situations requiring modification because of normal changes in the family would be made irrevocable. Because of this difficulty in the application of a broad rule of presumption of assent by a minor intended beneficiary, the present rule of the Restatement (Second) contained in Section 311 provides that the discharge or modification of a duty to an intended beneficiary is ineffective if a term of the promise creating the duty so provides. In the absence of such a term the right to change the agreement is retained. Section 311 goes on to provide that reliance or assent at the request of the parties terminates any such power retained in the original agreement. With respect to the question of presumption of an infant's assent, the comment to the section says:

> The true test rests not on fictitious assent but on the manifested intention of the original parties; other circumstances, such as the fact that the consideration for the promise is executory may rebut the inference that the beneficiary's right is irrevocable.

Restatement (Second) of Contracts, § 311, comment d (1979).

 Thus, the Restatement (Second) bases the determination of the question of the power to revoke upon the settled contract principle of determining the intention of the parties when there is no express power to revoke. The status of minority of the beneficiary is but one of the considerations in determining that intent. Thus, under the present rule of Restatement (Second) the analysis requires determining the intent of the parties with respect to the power of revocation at the time the original agreement was made. In determining that question, the whole agreement and the facts and circumstances surrounding the parties at the time the agreement was made are to be considered. In doing so, it is to be noted that like the situation in *Penney, supra*, the agreement contemplated a bargain fully performed. All of the rights of the parties incident to the divorce were settled and agreed upon at the time and no contingency remained. Thus, the consideration for the promises made was not executory but performed. The whole context of the agreement connotes irrevocability. There would be no basis for the husband to agree to benefit the children in the future except upon the basis of requiring the wife to perform that agreement and agreeing himself to be bound irrevocably to that situation. There is nothing in the agreement that in any way implies or creates by inference a power to revoke. Thus, whether this case is considered under the common law rule that the assent of the minor beneficiary is presumed or under the Restatement (Second) rule of determining the intention of the parties with respect to revocation on the basis of the whole agreement and the circumstances, the result is the same. The agreement was irrevocable. It follows that the attempted revocation was a nullity. Since the sale has occurred, a trust has arisen for the benefit of the children.

The judgment of the trial court is reversed and the cause remanded with directions to declare a trust in accordance with the original property settlement of the parties. On the remand, evidence may be required. The trial court shall be revested with the cause as upon a motion for new trial sustained upon appeal and all issues not settled by the order allowing interpleader shall be open for determination except that a valid trust has arisen in the proceeds of the sale.