762 F.2d 708
 COMPOSITE TECHNOLOGY, INC. and E. Keith Harvey, Appellees,
v.
UNDERWRITERS AT LLOYD'S, LONDON, Guardian Royal Exchange
Assurance, LTD., La Concorde Compagnie D'Assurances S.A.
(No. 1 account), La Concorde Compagnie D'Assurances S.A.
(No. 2 account), Norwich "Trust" Account, Minster Insurance
Company, LTD., Sphere Insurance Company, LTD. (No. 2
account), Drake Insurance Company, LTD. (No. 2 account),
Compagnie D'Assurances, Maritimes, Aeriennes and Terestres,
S.A., Assurances Generales De France, Gan Incendie Accidents
Compagnie Francaise D'Assurances et de Reassurances,
Scottish Land Insurance LTD., Andrew Weir Insurance Company,
LTD., British Reserve Insurance Company, LTD., British Law
Insurance Company, LTD. (No. 2 account), Lombard Insurance
Company (U.K.) LTD. (No. 2 account) Road Transport and
General Insurance Company, LTD. ("G" account), Appellants.
 No. 84-1589.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Jan. 18, 1985.
Decided May 21, 1985.
 
 Thomas C. Walsh, St. Louis, Mo., for appellants.
 Larry O'Neal, Kansas City, Mo., for appellees.
 Before ARNOLD, Circuit Judge, HENLEY, Senior Circuit Judge, and BOWMAN, Circuit Judge.
 BOWMAN, Circuit Judge.
 
 
 1
 The issue in this case is whether the word "sales" in the liability insurance policy here involved is sufficiently precise and unambiguous to allow for summary judgment based strictly on the language of the policy, without consideration of any extrinsic evidence. The District Court ruled that it was, and granted summary judgment in favor of the insured. We reverse and remand.
 
 I.
 
 2
 A military helicopter crashed near Passaic, Missouri on June 11, 1982. Six members of the United States Air Force were killed. The accident involved a helicopter rotor blade that allegedly had been repaired by Composite Technology, Inc. (CTI). Following the crash, several lawsuits were filed naming CTI, among others, as a defendant and claiming that CTI had negligently performed repairs to the rotor blade of the doomed helicopter.
 
 
 3
 CTI gave its liability insurance carriers (the Underwriters) timely notice of the crash, and requested that they assume CTI's defense of the lawsuits arising therefrom and that they provide coverage for any damages awarded. Relying on an exclusion in the policy for "sales to military organizations," the Underwriters denied any obligation to defend or to provide coverage.
 
 
 4
 CTI and its president and principal stockholder E. Keith Harvey[1] then filed the present action against the Underwriters to obtain a declaratory judgment of coverage and duty to defend.[2] The Underwriters subsequently agreed to assume the defense of the underlying lawsuits subject to a reservation of rights.
 
 
 5
 Less than a month after the Underwriters filed their answer to the complaint, CTI moved for summary judgment, arguing that the insurance policy issued to it by the Underwriters unambiguously provides for coverage of any improper repairs by CTI to military helicopters. At the time CTI filed its motion, there had been no discovery.
 
 
 6
 Denying that the policy affords coverage for liability arising out of repairs performed by CTI for the military, the Underwriters sought to engage in discovery for the purpose of gathering evidence that would shed light upon the language of the policy. They also submitted the insurance application and several affidavits for the same purpose. The District Court, however, concluded that the issues raised by the motion for summary judgment could be resolved within the four corners of the policy. Having thus foreclosed consideration of any extrinsic evidence, the District Court took into account only the language of the policy, and found that "[a] reasonable reading of the pertinent portions of the policy leads to the conclusion that coverage is afforded for liabilities arising out of repairs performed by CTI for military organizations." Composite Technology, Inc. v. Underwriters at Lloyd's, London, No. 83-0671, mem. op. at 4 (W.D.Mo. April 2, 1984). Noting that the lawsuits against CTI arising out of the crash of the Air Force helicopter are based on the theory that CTI negligently performed repairs, the District Court granted CTI's motion for summary judgment. This appeal has followed.[3]II.
 
 
 7
 The Underwriters contend that the District Court erred in granting summary judgment in favor of CTI on the basis of the policy language alone, without consideration of the evidence proffered by the Underwriters to show the scope of the policy's coverage. Where a written contract is ambiguous, resort to parol evidence--evidence extrinsic to the four corners of the instrument--is proper to resolve the ambiguity. See J.E. Hathman, Inc. v. Sigma Alpha Epsilon Club, 491 S.W.2d 261, 264 (Mo.1973). "The meaning of an ambiguous contract is determined in light of the extrinsic circumstances." Penney v. White, 594 S.W.2d 632, 638 (Mo.App.1980). The question, then, is whether the policy is free from ambiguity. We believe it is not.
 
 
 8
 The key provision here at issue is paragraph 3 of the schedule attached to the policy:
 
 
 9
 THE NATURE OF THE ASSURED'S BUSINESS OR OPERATION IN RESPECT OF WHICH THE POLICY IS EFFECTED IS:--
 
 
 10
 Rotor Blade Repairers operating at Stockton, California and Dallas, Texas in respect of Civil Operations only excluding any liabilities in respect of sales to military organisations, if any[.]
 
 
 11
 Appendix at 406. This language, hand-tailored for the CTI policy and typewritten on what appears to be a pre-printed form, immediately tells us that the policy covers CTI's business as "Rotor Blade Repairers," and that coverage is afforded "in respect of Civil Operations only." The latter phrase would appear to rule out any coverage whatsoever for military operations, as distinguished from repair services rendered in the civilian sector. Doubt creeps in, however, because of the phrase "excluding any liabilities in respect of sales to military organisations, if any[.]" What is meant by the word "sales"? Was it intended simply to confirm, somewhat redundantly, the apparent total exclusion with respect to military operations, or was it intended to narrow the scope of that exclusion? CTI argues, and the District Court agreed, that "sales" as here used should be read narrowly as meaning only "sales of goods," resulting in the conclusion that the policy excludes from coverage only sales of goods by CTI to military organizations. The Underwriters argue that "sales" was intended to encompass all transactions with the military, i.e., sales of repair services as well as sales of goods. The word "sales" is quite capable of bearing either meaning[4] and the question is which of the ascribed meanings is in accord with the intention of the parties as of the time they entered the contract. The ambiguity is facially apparent, and is not cured by resort to other provisions of the policy, which provisions, unlike the clause under discussion, consist mostly of boilerplate language. We therefore hold that the District Court erred in determining that the word "sales" was free from ambiguity and therefore also erred in limiting its inquiry to the four corners of the contract. It follows that the order of the District Court granting summary judgment in favor of CTI must be vacated.
 
 
 12
 Having examined the insurance policy with some care, we wish to emphasize our belief that the boilerplate or standard provisions of the policy are of little help in determining the meaning that should be given to the exclusionary language in issue. The clause in question is a negotiated term. It is the only provision that deals directly with the all-important question of to what extent the policy excludes CTI's military operations from coverage. Further, this clause gives the appearance of having been written in some haste and without a great deal of care--in striking contrast to the standard provisions of the policy, which obviously are the product of skilled and careful draftsmanship. Thus, we are of the view that the District Court's reliance on a distinction made in the standard provisions between "sales" and "repairs" is misplaced, and that resort to extrinsic evidence is required to determine whether any such distinction is to be read into the non-standard language in question. For similar reasons, we are not convinced that this is an appropriate case for applying the rule that ambiguous policy language is to be construed against the insurer. In any event, that rule would seem to be singularly inappropriate in this case if on remand the District Court finds, as asserted by the Underwriters, that the exclusionary clause was drafted by CTI's agent.
 
 
 13
 Our conclusion that the policy is facially ambiguous with respect to the scope of coverage is dispositive of the arguments of both CTI and the Underwriters for entitlement to summary judgment based on the policy language alone.[5] Because the policy is ambiguous, the intention of the parties can best be determined with the aid of evidence from outside the policy.[6]
 
 
 14
 The Underwriters invite us to consider the policy, CTI's insurance application, and the affidavits that were submitted to the District Court and, based thereon, to enter summary judgment in their favor. We decline this invitation. Although the Underwriters' evidence and arguments in support of their version of the scope of the coverage provided by the policy are not without persuasive force, we believe that the effect of the policy language, the insurance application, and the other evidence should be determined in the first instance by the District Court. Additionally, we note that CTI based its motion for summary judgment on the theory that the policy is free from ambiguity. Consequently, CTI thus far has relied exclusively on the language of the policy, and has not presented affidavits or other extrinsic evidence concerning the scope-of-coverage issue. Moreover, the Underwriters did not request the District Court to enter summary judgment in their favor. In these circumstances, it would be manifestly unfair not to give CTI an opportunity to develop and present extrinsic evidence in support of its position on the coverage issue.
 
 III.
 
 15
 For the reasons set forth above, we reverse the District Court's order granting summary judgment in favor of CTI, and remand this case for further proceedings consistent with this opinion.
 
 
 16
 So ordered.
 
 
 
 [1]
 The two plaintiffs are referred to collectively throughout this opinion as CTI
 
 
 [2]
 CTI's claims against the Underwriters for attorneys' fees and for damages for breach of the duty of good faith and fair dealing have been dismissed with prejudice. CTI's claim that any punitive damages that may be assessed against it in the underlying lawsuits are within the coverage provided by the Underwriters has been dismissed, without prejudice, as premature
 
 
 [3]
 The jurisdiction of this Court was invoked in the present appeal under 28 U.S.C. Sec. 1291, which provides that the "courts of appeals ... shall have jurisdiction of appeals from all final decisions of the district courts of the United States."
 Fed.R.Civ.P. 58 provides in part as follows:
 Every judgment shall be set forth on a separate document. A judgment is effective only when so set forth and when entered as provided in Rule 79(a).
 In this case the District Court failed to set forth the judgment on a separate document as required by Rule 58. During the oral argument of this appeal, we raised with counsel the question of whether the decision of the District Court was "final" for the purposes of Sec. 1291, since the judgment was not set forth on a separate document as required by Rule 58. Counsel for both sides indicated their desire to waive the separate-judgment requirement of Rule 58. It further is apparent from the record that the District Court intended the opinion and order from which the appeal was taken to be its final decision in the case. Accordingly, we find that there has been a waiver of the separate-judgment requirement in this appeal and that we properly can assume appellate jurisdiction under 28 U.S.C. Sec. 1291. See Bankers Trust Co. v. Mallis, 435 U.S. 381, 98 S.Ct. 1117, 55 L.Ed.2d 357 (1978). District judges are reminded, however, that the separate-judgment rule is mandatory, and that it plays an important role in making a judgment "final" and in determining when the time for filing a notice of appeal starts to run.
 
 
 [4]
 We note that in today's service-oriented economy it is commonplace to speak of sales of services as well as of sales of goods. A standard dictionary defines the word "sales" as meaning "operations and activities involved in promoting and selling goods or services," and, alternatively, as "gross receipts." Webster's Third New International Dictionary, p. 2003 (defining the plural of the noun "sale") (1981)
 
 
 [5]
 The Underwriters contend that the District Court erred in failing to consider CTI's application for insurance (which specifically advised the Underwriters: "military coverage not needed") as part of the policy. We need not decide whether that contention is correct, for even if we assume it is, we believe our proper course is to remand the case. On remand the District Court should consider the policy language in light of the application, the affidavits already submitted by the Underwriters, and any other relevant evidence the parties may submit
 
 
 [6]
 Patent ambiguity here being the predicate for the consideration of extrinsic evidence, we need not pursue the interesting question of whether, under Missouri law, extrinsic evidence may be considered to shed light on the meaning of a contractual term that is not facially ambiguous. We do note, however, that Cure v. City of Jefferson, 380 S.W.2d 305 (Mo.1964), and Spychalski v. MFA Life Ins. Co., 620 S.W.2d 388 (Mo.App.1981), support the view that "a court--quite apart from ambiguity or nonambiguity--is entitled to look at more than only the words of undertaking." Id. at 394